DAILEY *v.* SHAFFER.

1. PHYSICIANS AND SURGEONS—NEGLIGENCE—MALPRACTICE.
Where defendant was called to administer to decedent who was suffering from a gunshot wound in the leg, and defendant treated and bandaged the wound but did not examine the arteries which were severed, so that the patient died later from loss of blood, the question of the physician's negligence in failing to inform himself of

existing conditions was for the jury, upon expert testimony tending to show that he should have examined, discovered and remedied the bleeding.

2. SAME—EMERGENCY CASE.

The defendant's contention that he could not have discovered the severed arteries without endangering the life of the patient, plaintiff's witnesses testifying in conflict with such claim, was properly left to the determination of the jury.

3. SAME—DUE CARE—MALPRACTICE.

The rule that in emergency cases a physician who acts on his best judgment as to treatment is not liable for negligence because he adopted one treatment rather than another, necessarily assumes that he has informed himself of existing conditions, without knowing which he would have no proper basis for the exercise of his discretion.[1]

4. SAME—INCONSISTENT POSITIONS.

Where it was claimed by plaintiff that the attending physician should have ligated the arteries of decedent's wounded leg, and at the trial, the medical witnesses agreed that gangrene would have resulted if the physician had so treated it and amputation would have been necessary, the court did not err in leaving the question of damages to the jury to be estimated on the basis of the probable earnings of deceased in his crippled condition: nor was the cause of action changed by reason of such charge.

5. SAME.

It was also proper to submit to the jury the question whether the physician should have given the patient further attention, as claimed by the witnesses for plaintiff; and a new trial was correctly denied on the motion of defendant, based on the ground of the weight of evidence.

Error to Gratiot; Searl, J. Submitted April 28, 1913. (Docket No. 77.) Decided March 26, 1914. Rehearing denied July 25, 1914.

---

[1] On the question of the care required of one in sudden emergency, see note in 37 L. R. A. (N. S.) 43.

Case by Emma Dailey as administratrix of the estate of Albert Dailey, deceased, against John R. Shaffer for malpractice. Judgment for plaintiff, and defendant brings error. Affirmed.

*William A. Bahlke* and *O. G. Tuttle,* for appellant.

*Dean W. Kelley* and *J. Earle Brown,* for appellee.

BIRD, J. The defendant, Dr. Shaffer, has brought to this court for review a judgment rendered against him for malpractice while treating plaintiff's husband for a gunshot wound. It appears that plaintiff's intestate was a farmer, 47 years of age, in good health, living with his family on his farm a mile and a half from Elm Hall. On the morning of the 13th of December, 1908, while in a slashing several rods from his dwelling, he accidentally received a gunshot wound in the calf of his right leg. The charge, which was composed of No. 6 shot, tore its way clear through the thick part of the calf, leaving a hole large enough to insert two fingers. He was removed to his house, and the defendant arrived within a few minutes thereafter and took charge of the case. The wound was partially cleansed and some of the foreign matter removed, after which antiseptic gauze was inserted, and the leg was bandaged. Strychnine tablets were administered, as the patient was suffering from shock and loss of blood. After giving members of the family some instructions as to treatment during his absence, he left at about 11 o'clock in the forenoon, after having been there an hour, and returned at 3 o'clock in the afternoon, to find the patient somewhat improved. At this time, he remained about 15 minutes. On the first visit, the doctor made some investigation to learn the extent of the injury, but did not go far enough with it to learn whether any of the arteries had been severed or punctured. On the second visit, he made no investigation in this re-

spect.   At 7 in the evening, it was thought the patient was bleeding too freely, and repeated attempts were made to reach the doctor over the phone, but without avail.   At 4 o'clock the next morning his condition became alarming, and a neighbor was dispatched for the doctor, but before he reached there the patient was dead.   A *post mortem* examination disclosed the facts that the posterior tibial artery was cut off and the popliteal artery was partially divided, and experts gave it as their opinion that he died from arterial hemorrhage.

The negligence with which the doctor was charged was:   First, a failure to ligate the severed and injured arteries; second, in failing to visit and attend to the patient as often and as much as he should have done.   The defense made to these charges was that the treatment was proper under the circumstances; that the patient was suffering from shock and loss of blood; and that had a thorough examination been made, as to the condition of the arteries, the patient would have died while the examination was being made.   But it is insisted in his behalf that, in any event, the case comes within a class of cases known as "emergency cases," wherein, if a physician exercises his best judgment as to the treatment, he is not liable for negligence for an error of judgment in following one treatment rather than another.   The rule contended for is the one laid down in *The Tom Lysle* (D. C.), 48 Fed. 690, and approved by this court in *Luka* v. *Lowrie,* 171 Mich. 122 (136 N. W. 1106, 41 L. R. A. [N. S.] 290).   It is there said:

"The distinction between an error of judgment and negligence is not easily determined.   It would seem, however, that if one, assuming a responsibility as an expert, possesses a knowledge of the facts and circumstances connected with the duty he is about to perform, and, bringing to bear all his professional experience and skill, weighs those facts and circum-

stances, and decides upon a course of action which he faithfully attempts to carry out, then want of success, if due to such course of action, would be due to error of judgment, and not to negligence. But if he omits to inform himself as to the facts and circumstances or does not possess the knowledge, experience, or skill which he professes, then a failure, if caused thereby, would be negligence. 'No one can be charged with carelessness, when he does that which his judgment approves, or where he omits to do that of which he has no time to judge. Such act or omission, if faulty, may be called a mistake, but not carelessness' "—citing *Brown* v. *French,* 104 Pa. 604; *Williams* v. *Le Bar,* 141 Pa. 149 (21 Atl. 525).

In *Staloch* v. *Holm,* 100 Minn. 276 (111 N. W. 264, 9 L. R. A. [N. S.] 712), the writer of the opinion, in commenting upon this exception to the general rule, says:

"One reasonable justification for this exception * * * is the elementary principle that when a man acts according to his best judgment in an emergency, but fails to act judiciously, he is not chargeable with negligence. * * * Physicians in the nature of things are sought for and must act in emergencies, and if a surgeon waits too long before undertaking a necessary amputation, he must be held to have known the probable consequences of such delay, and may be held liable for the resulting damage" —citing *Du Bois* v. *Decker,* 130 N. Y. 325 (29 N. E. 313, 14 L. R. A. 429, 27 Am. St. Rep. 529); *Martin* v. *Courtney,* 75 Minn. 255 (77 N. W. 813).

The difficulty we have in applying this rule to the case in hand is the claim of the plaintiff that the doctor failed to make such investigation as was necessary to determine what ought to be done. This exception to the ordinary rule of negligence is based upon the assumption that the physician has informed himself of the existing conditions. Without a knowledge of these, he has no proper basis upon which he can exercise his discretion. One of the complaints and the one most strenuously insisted upon by the

plaintiff was the failure of the doctor to inform himself as to whether the arteries were cut off or punctured. The doctor admits he did not ascertain these things, and it was shown by expert witnesses that he should have done so; that he should have found the bleeding point and stopped it. After he determined what course to pursue without this information, he is in no position, as a matter of law, to invoke the protection of the rule in emergency cases.

But it is argued that this information could not have been obtained without endangering the life of the patient. This question was in dispute and was one of the points upon which there was a conflict of expert testimony. It was therefore properly submitted to the jury to determine whether he did what was necessary to bring his treatment within the rule in emergency cases.

The defendant's third ground of complaint is—

"That the plaintiff in her declaration having declared specifically, that the defendant's misconduct consisted in not having ligated the posterior tibial artery, and in nonattendance upon his patient, and the opening statement of counsel having amplified these grounds as her cause of action, and the case having been presented by plaintiff upon this theory to the close of Dr. Gale's testimony, that the court should not have permitted the plaintiff to change the whole cause of action by permitting her to recover upon the theory that the defendant's neglect consisted in not having amputated the patient's right leg above the knee and in permitting a recovery for a sound, robust man with one leg, instead of the same kind of a man with two legs."

The experts upon both sides of the case agreed, upon the trial, that had the arteries been ligated, as it was claimed by plaintiff they should have been, it would have resulted in gangrene, and amputation of the limb would have been necessary. In view of this,

the court charged the jury on the question of damages in part as follows:

"The plaintiff in this case, if entitled to damages, can recover, as administratrix of Dailey's estate, such an amount as would equal the present worth of what Dailey would have earned in his crippled condition, having but one leg, from the time of his recovery sufficiently to permit him to resume work, and during the probable duration of his life."

When testimony developed that if the patient had had the treatment which plaintiff insists he should have had it would have resulted in amputation, we think the charge of the court was proper, and that there is no reasonable basis for claiming that the whole cause of action was changed by reason of such charge.

As to plaintiff's ground of complaint that the arteries should have been found and ligated on either the first or second visit, the expert testimony was in conflict; therefore it presented a question of fact for the jury. The other ground of complaint, as to whether the defendant gave the patient the attention and care which the case demanded, was one upon which there was conflicting testimony, both lay and expert, and this question was likewise one for the jury. The testimony upon both of these questions was such that the jury would have been justified in finding either way. And we think that the trial court was justified in refusing to set the verdict aside as being against the weight of the evidence.

The other assignments have been examined but we find no reversible error in them.

The judgment of the trial court will be affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.