147 So. 608

### STEPHENS v. WILLIAMS.

#### 6 Div. 242.

Supreme Court of Alabama.

March 9, 1933.

Rehearing Denied April 27, 1933.

Horace C. Wilkinson, of Birmingham, for appellant.

H. M. Abercrombie and Jarrett Abercrombie, both of Birmingham, for appellee.

**BOULDIN, Justice.**

The suit is under the homicide statute. Code, § 5696.

The cause was tried on counts 2, 3, and 4 of the complaint as amended.

Count 2 alleged that defendant, J. H. Stephens, a practicing physician and surgeon, "undertook to perform an operation upon plaintiff's intestate, L. Williams, which said operation consisted in the removal of the tonsils of plaintiff's said intestate," and that defendant "so negligently performed said operation" that, as a proximate consequence, the intestate lost his life.

Count 3 avers, as in count 2, that defendant undertook to perform the operation "and to treat and care for plaintiff's said intestate after said operation was performed," and defendant "so negligently conducted himself in that regard" that death ensued as a proximate result.

Count 4 follows count 2, adding that the undertaking was "for reward."

These several counts were good against demurrer. Peck v. Henderson, 218 Ala. 233, 118 So. 262; Horn. v. Pope, 205 Ala. 127, 87 So. 161.

It appears in evidence that Dr. Stephens, the defendant, was under contract with the Brotherhood Insurance Company to do the surgical work for those holding proper identification cards; that it was contemplated such services should be rendered at Woodlawn Infirmary, an incorporated hospital, of which Dr. Stephens was president and operating surgeon, but open to other physicians and surgeons.

Plaintiff's intestate, the holder of a card, and entitled to surgical services, drove in an automobile from Randolph, Ala., to this infirmary for the purpose of having his tonsils removed. Dr. Stephens performed the operation. The patient died some four to five hours thereafter.

" 'A civil action for malpractice against a physician and surgeon may be sustained on proof of a failure to exercise reasonable and ordinary care, diligence and skill in respect to the duty so assumed and undertaken as physician and surgeon—such care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice, ordinarily employ and exercise in a like case.' " Moore v. Smith, 215 Ala. 592, 595, 111 So. 918, 920, and authorities there cited.

The burden of proof was on plaintiff to show negligence, failure to exercise the degree of care thus accurately defined.

Appellant insists he was due the affirmative charge as to the several counts for failure to prove negligence as charged.

Mrs. Williams testified she accompanied her husband, the deceased, on the trip to the hospital; was with him at all times before he went into the operating room, except for a few minutes while he was dressing, when she was near and in sight of the door of his room; that no one entered the room during that time; that no pre-operative examination was made by any one; that she accompanied her husband into the operating room, where, before the anæsthetic was administered, Mr. Williams said to Dr. Stephens: "Say, Doc, aren't you going to take a blood test or a heart test?" To which the doctor replied: "You are in fine shape. * * * You came up here to have your tonsils taken out?" Mr. Williams answered: "Yes." The doctor said: "That is what I am going to do." Mrs. Williams further testified that at the same time she told Dr. Stephens the patient had only been up from the "flu" about

a month, and suggested he better take a heart test.

■ We here observe there was no error in admitting this evidence, the declarations of the deceased, because of incompetence of the witness. The witness was not incompetent under Code, § 7721. This court has decided that section does not apply to parties to a civil action under the homicide statute. This, for the reason that the estate of the decedent is not interested in the result of the suit. The administratrix is a statutory representative, suing for the sole benefit of beneficiaries named in the statute. True, this plaintiff, as widow, has a pecuniary interest in the result; so has the defendant. But the statute removes all disqualification because of such interest. Both are competent witnesses in this action to any statements by or transactions with the deceased, which are admissible under general rules of evidence. Kuykendall v. Edmondson, 205 Ala. 265, 87 So. 882; Lewis v. Martin, 210 Ala. 401, 410, 98 So. 635.

Evidence of physicians and surgeons, and from text-writings of recognized authority, tended to show that reasonable care requires a pre-operative examination in cases of the removal of tonsils by an operation, known to the profession as "tonsillectomy"; that this includes examination of the heart, the lungs, the kidneys, and a coagulation test of the blood; that such practice prevails among the profession in Birmingham, the general neighborhood of this operation.

The death certificate made by Dr. Stephens, and in evidence, stated as the cause of death: "Acute dilation of heart following anæsthetic for tonsil operation." Further evidence on the trial tended to show "cyanosis," a turning blue of the skin, indicating bad breathing, want of sufficient oxygen, after the operation, and for some time, variously estimated, before his death.

Plaintiff further testified to copious and long-continued bleeding; that Dr. Stephens said at the time: "He was a bleeder. * * * He bled to death." This statement was denied.

■■ Dealing with the affirmative charge, and without enlarging on the evidence, we conclude it was a jury question as to whether any pre-operative examination was made; and whether such examination would have disclosed the patient not in condition for an operation by the use of a general anæsthetic, at least without preparatory treatment indicated by the professional witnesses.

■■ We fully recognize that professional testimony alone should be looked to for matters of fact or opinion peculiarly within their professional learning and experience. Such evidence is to be taken in connection with other evidence of facts within the knowledge of witnesses testifying thereto. Thus considered, the tendencies of the evidence supported an inference of negligence and its causal connection with the death of the patient.

■ It is not essential that the evidence reasonably satisfy the jury whether the fatal result was due to heart trouble, lung trouble, or bad condition of the blood as to coagulation. If the evidence supported a reasonable inference that death was due to any one or more of these causes, and would have been avoided by such pre-operative examination as, by the common practice of surgeons in that general neighborhood, are ordinarily made as a reasonable precaution in such cases, and no such examination was made, this was sufficient.

■ All this, however, is subject to further inquiries. Among them, appellant argues the complaint does not cover any charge of negligence in the matter of a pre-operative examination, that the negligence charge is limited to the actual operation on the operating table, and after treatment under count 3.

Reliance is had on Akridge v. Noble, 114 Ga. 949, 41 S. E. 78, 81, where the negligence charged was allowing a sponge used as a pad in the operation to remain in the wound, and be sewed up inside the body. Discussing a contention that a different measure of skill and diligence applied to a removal of the sponges after the operation proper was complete, the court held there was no sound basis for a distinction as the duty of the surgeon at different stages of the operation, and said: "It seems to us that the operation begins when the opening is made into the body, and ends when this opening has been closed in a proper way, after all appliances necessary to the successful operation have been removed from the body." This statement was quoted and followed in a similar case, Harris v. Fall (C. C. A.) 177 F. 79, 27 L. R. A. (N. S.) 1174.

These cases do not deal with the question of negligence vel non, in entering upon an operation without such pre-operative examination as reasonable care demands to ascertain whether the patient is in condition to undergo such treatment.

The evidence of competent physicians and surgeons in the present case tended to show the pre-operative examination is incident to such operations; reasonably necessary, in the nature of a diagnosis, determinative of the propriety of the surgical treatment employed.

Thus viewed, the undertaking to remove the tonsils by an operation, as alleged in the complaint, includes such pre-operative examination, just as an allegation of negligence in "treatment" of disease includes negligence in examination and diagnosis as well as application of remedies. Hester v. Ford, 221

Ala. 592, 130 So. 203; Robinson v. State ex rel. James, 212 Ala. 459, 102 So. 693; Hamrick v. Shipp, 169 Ala. 172, 52 So. 932; Staples v. Steed, 167 Ala. 241, 52 So. 646, Ann. Cas. 1912A, 480; Dailey v. Shaffer, 178 Mich. 574, 146 N. W. 192.

We further note that the evidence touching a pre-operative examination was admitted without objection. If a variance from the complaint, the record does not show this was called to the attention of the trial court, as required by circuit court rule 34.

Defendant's evidence does not controvert the proposition that ordinary and reasonable care calls for a pre-operative examination, but proceeds on a theory now to be considered.

Evidence tends to show that pre-operative examination in cases of removal of tonsils is a part of the regular routine in hospitals; that such examination is made in regular course by the house doctor or interne; that Woodlawn Infirmary had, at the time, as acting interne, Dr. Somerset, a young physician, duly licensed as such, with something more than a year's active experience in this hospital; that he was competent to make such examinations; and in regular routine he made the pre-operative examinations of patients of this class.

Defendant's evidence tends to show he did make the examination of Mr. Williams, and found and reported him in proper condition for such operation. As before stated, there was a direct issue of fact as to whether any such examination was made, a strictly jury question.

■ In dealing with the affirmative charge, on a careful consideration of the testimony we conclude it was a question for the jury to decide whether any such report was ever made.

If in fact no examination was made, a mere verbal and general report, made in the presence of the patient and Mrs. Williams, when they were calling for an examination, is at variance with plaintiff's evidence, if not the answers of Dr. Stephens to interrogatories when the matter was fresher in memory than at the trial had more than three years after the occurrence.

■ In this connection we conclude it cannot be said, as matter of law, Dr. Stephens was authorized to assume that a proper examination had been made and the patient found in proper condition before being brought to the operating room where Dr. Stephens first saw him. Without considering when, if ever, the physician and surgeon undertaking to perform this class of operation may take for granted such examination has been made with satisfactory results, the evidence of plaintiff, if believed, tended to show such notice to Dr. Stephens, calling for inquiry on his part, as to present a jury question at least touching a want of due care in assuming a proper examination had been made, if he did so assume.

■ We see no reason to hold as matter of law that after-treatment immediately following the operation, while the patient's reaction to the operation is still in doubt, is not within the original undertaking of the physician and surgeon. The evidence tends to show the defendant did recognize such obligation, and undertook such treatment. The evidence here again presented a jury question touching negligence in this regard.

The affirmative charge was properly refused as to each of the counts.

Several charges refused to defendant go to the question of negligence on the part of the physician in case the jury should find that the interne did report to Dr. Stephens that he had made the pre-operative examination and found the patient in good condition.

It is insisted that the defendant had the right to rely upon such report, or assume its correctness, in certain events recited in the several charges, numbered respectively 8, 9, 10, 29, and 32. Each charge must, of course, be considered on its own hypothesis, without aid from other hypothesis stated in other charges.

In Robinson v. Crotwell, 175 Ala. 194, 208, 57 So. 23, 28, the suit was against the regular physician who had treated the patient for a disease, had advised an operation, and had recommended a surgeon to perform it. It was said: "Nor is there any suggestion in pleading or in proof that defendant negligently advised the employment of an unskillful or incompetent surgeon to perform the operation. Under these circumstances, the defendant was not responsible for any default on the part of the operating surgeon, who was practicing his profession as an independent agent. Myers v. Holborn, 58 N. J. Law, 193, 33 A. 389, 30 L. R. A. 345, 55 Am. St. Rep. 606."

In Myers v. Holborn, cited in the above excerpt, a physician had been engaged in a case of obstetrics, and being called by telephone, another physician answered that the former was out of town, that the latter represented him, and took charge of the case without objection. The suit was against the former for the negligence of the latter, on the theory that defendant was liable for the negligence of the acting physician under the doctrine of respondeat superior. The New Jersey court said: " * * * Even if it be admitted, therefore, that Dr. P. was employed by the defendant to attend upon the wife of the plaintiff, that fact did not render the defendant liable for his neglect or want of skill in the performance of this service, for an examination of the authorities will show that a party employing a person who follows a distinct and independent occupation

of his own is not responsible for the negligent or improper acts of the other." Myers v. Holborn, 58 N. J. Law, 193, 33 A. 389, 30 L. R. A. 345, 55 Am. St. Rep. 607. It will be noted this court, in the above excerpt, rather safeguarded or qualified the sweeping statement last quoted, by saying there was no evidence of negligence in selecting an unskillful or incompetent surgeon.

In Sweeney v. Erving, 35 App. D. C. 57, 43 L. R. A. (N. S.) 734, cited by appellant, it was held: "A physician to whom a patient is sent by another physician of recognized ability, for an X-ray examination, may rely on the latter's judgment as to the patient's ability to undergo the examination without harm, and is under no obligation himself to make an examination into his condition to learn that fact." This same case further says: " * * * it is a general rule that it is incumbent upon a physician properly to inform himself, of the condition of his patient, that he may intelligently exercise the skill of his calling (Staloch v. Holm, 100 Minn. 276, 9 L. R. A. (N. S.) 712, 111 N. W. 264.)"

The text of 21 R. C. L. p. 388, cited by appellant, after stating the general rule of reasonable care in examination and diagnosis, adds: "But a physician is justified in accepting as correct the diagnosis or preliminary examination of another physician of good repute and in acting thereon."

In the same text it is stated: "A physician or surgeon must exercise due care in selecting his assistants." 21 R. C. L. p. 389.

The text of 48 C. J. pp. 1137, 1138, reads:

"§ 143. Assistant, Agent, or Employee. A physician is responsible for an injury done to a patient through the want of proper skill and care in his assistant, apprentice, agent, or employee.

"§ 144. Nurse or Attendant Other than Employee. A physician is not liable for the negligence of hospital or other nurses, attendants, or internes, who are not his employees, if he has no knowledge thereof, or has no connection therewith, or if it is not discoverable by him in the exercise of ordinary care, or unless he is negligent in permitting them to attend the patient."

The case of Harris v. Fall (C. C. A.) 177 F. 79, 27 L. R. A. (N. S.) 1174, is illustrative of negligence of internes and nurses of a hospital, not under the management of the physician and surgeon. It was a case of leaving a gauze in the operative wound. Negligence in leaving it in the body, and in after-treatment at the hospital, were involved. The surgeon was held responsible for reasonable care in the operation up to the closing of the wound; that a custom of the hospital that assistants or internes should remove packing, etc., was not binding on patients unadvised of such custom; and that when hospital service for care and nursing during the convalescing period is contracted for apart from the undertaking of the surgeon, he is not responsible for negligent treatment by the hospital employees.

The writer would not undertake to promulgate rules touching the liability of surgeons for negligence of others holding licenses, certificates of qualification to practice their respective professions or specialties, in all the relations of present-day practice.

Broadly speaking, the inquiry in each case involves the scope of the undertaking of a physician and surgeon when a patient comes to him to treat his ailment, having contractual relations with no one else.

Just rules for the protection alike of the profession and of the public, in line with general principles of law, should be the end sought in all cases.

Whether another member of the profession is to be treated as the agent of the employed physician, under the doctrine of respondeat superior, or whether the physician should be held to reasonable care only in the selection of competent professionals, to whom he may commit important portions of the work he has undertaken, must turn much on the particular case, and maybe on the course of practice among responsible physicians in the general neighborhood—where there is a relation of partners between physicians, it is generally held each is responsible for the negligence of the other.

In this case, it appears the interne was in a hospital of which Dr. Stephens was the head corporate officer and active surgeon. He says: "At that time I had charge of the Woodlawn Infirmary." Evidence shows he employed the head nurse on duty at the time. There was some evidence from medical sources that it is part of the task of the physician and surgeon to see to it that preoperative examinations are made by himself or other competent physician in cases like this.

The charges in question, and each of them, is invasive of the province of the jury. It cannot be said as matter of law the physician was in the exercise of reasonable care in acting, if he did, on a wholly fabricated report, under conditions specified in either of the charges under review.

It is well settled in our cases that the doctrine of res ipsa loquitur does not apply in malpractice cases; the bad or unfavorable result, standing alone, unless in cases of palpable misconduct within common knowledge, is not evidence of negligence which will shift the burden to defendant.

The evidence must afford a reasonable inference of want of ordinary skill or diligence as a proximate cause of such results. Dabney v. Briggs, 219 Ala. 127, 121 So. 394.

This does not mean the fact of death and the circumstances of it are not evidence to be considered along with the other evidence in passing upon the question of negligence.

Defendant's refused charge 34 was misleading. Given charges 23 and 24 sufficiently cover the principle involved.

The court, in oral as well as given charges, instructed the jury in clear terms the measure of proof required, the reasonable satisfaction of the jury.

Refused charges 25 and 27, if not otherwise faulty, were negative statements of the same principle. Such charges are more calculated to confuse than to aid the jury.

Refused charges 15, 16, 18, and 20 were invasive of the province of the jury. We need not here repeat the tendencies of the evidence on the issues dealt with in these charges.

There was no error in receiving the testimony of Mrs. Williams that during his last hours the patient appeared to be growing weaker or worse. We would not say that a wife, though no expert, cannot observe changes of appearance, state of breathing, and other details in evidence, and so form an intelligent opinion such as stated.

We have considered all the assignments of error insisted upon, and find no error to reverse. This opinion will not be further extended.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.