**In re Kenneth E. BERRY, Jr.**

v.

**Herman v. GIRARD d.b.a. Anderson's Garage and/or Lumbermens Mutual Casualty Co.**

Supreme Judicial Court of Maine.

Aug. 2, 1974.

Bennett & Schwarz by Barry Zimmerman, Portland, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Robert E. Noonan, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

Unlike the usual workmen's compensation case which comes before us, there is no dispute here but that Kenneth Berry, Jr., received a personal injury in the course of his employment and arising out of his employment.

He is entitled by law to workmen's compensation by his employer's insurance carrier and is receiving such compensation. Most of his claimed medical expenses have been paid and are not in issue.

The case comes to us because the Industrial Accident Commission ruled · that only a portion of a bill for services rendered by a chiropractor who treated the employee is payable by the employer's carrier.[1]

Following his injury the employee Berry sought the services of Dr. Lynch for treatment of his lower back.

Dr. Lynch testified before the Commission that he obtained a history from the patient; that he conducted a clinical examination of him and that he x-rayed the spine and that the clinical examination consisted of "spinal, neurological and orthopedic examination."

After the examinations above described were conducted, Dr. Lynch proceeded to administer chiropractic treatment in the area of the lower back.

The bill rendered for his total services included a charge of $38.00 for the x-ray and diagnostic evaluation and a separate item for chiropractic treatment of the lumbar spine. So much of the bill as related to the treatment of the lumbar spine has been paid by the carrier.

The Industrial Accident Commission ruled that the charge for the diagnostic evaluation, including x-ray, was not an item for which the carrier is liable under the workmen's compensation law. 39 M. R.S.A. § 52.

Appeal was seasonably taken to the Superior Court and a Pro Forma Decree sustaining the conclusion of the Industrial Accident Commission was entered.

We deny the appeal.

The only issue before us is whether or not diagnostic examinations conducted by a chiropractor, duly licensed in the State of Maine, are properly chargeable against the employer and/or his insurance carrier under the provisions of 39 M.R.S.A. § 52.[2]

The thrust of appellant's argument is that treatment of the lumbar spine could not reasonably be undertaken until there had been a diagnosis, including x-ray, to determine the condition sought to be treated. That diagnostic evaluation, including x-rays, are compensable items, he argues, is implied from the provision of the statute authorizing reimbursement to the employee by the employer or his carrier for "reasonable chiropractic treatment for the relief thereof."

We cannot agree.

We conclude that within the context of the Workmen's Compensation Act with specific reference to Sec. 52 thereof, "neurological, orthopedic and x-ray examinations" are not intended to be compensable by the employer or his carrier as part of "reasonable chiropractic treatment."

We are aware that there are cases which hold diagnosis is a part of treatment.[3] Such decisions, however, were made in a context quite different from that with which we are concerned.

Appellant cites Hester v. Ford, 221 Ala. 592, 130 So. 203, 206, (1930) and Stephens v. Williams, 226 Ala. 534, 147 So. 608, 612 (1933) "for precedent holding that the

1. The appeal was taken by Robert P. Lynch, D.C., the chiropractor who rendered the service to Berry. The statute (39 M.R.S.A. § 103) authorizes appeal by *"any party in interest."* Since the parties have not raised the question, we assume without deciding that Dr. Lynch is a party in interest.

2. The applicable portion of the statute, prior to the 1973 amendment which struck the words "by accident," read as follows:
"An employee sustaining a personal injury by accident arising out of and in the course of his employment, provided said injury

consists of a lumbar, sacral or cervical strain shall be entitled to reasonable chiropractic treatment for the relief thereof. Such treatment shall consist of palpating and adjusting the segments and articulations of the human spinal column by hand. A duly licensed chiropractor shall be considered competent to testify before the Industrial Accident Commission."

3. c. f. Simon v. Hospital Service Ass'n of Pittsburgh, 192 Pa.Super. 68, 159 A.2d 52 (1960).

word 'treatment' can include diagnostic examinations."

In *Hester* it was held that evidence as to negligent treatment was properly received to support an allegation in a malpractice action that there was negligence in diagnosis.

In Harris v. Osorio, 125 N.J.Super. 463, 311 A.2d 402, 404 (1973), the Court was concerned with an interpretation of the New Jersey no-fault insurance statute. The question there presented was whether the neurosurgeon's examinations for which he charged $125.00 were to be considered as "treatment" in which case the cost thereof would be deemed a "medical expense" as defined in M.J.S.A. 39:6A–2(e); or, are the examinations to be considered as "diagnosis," in which case the costs therefor would be deemed "diagnostic medical expenses" not included for the purpose of reaching the $200 threshold, at which suit is allowed to be instituted.

In that case the Court drew a distinction between "medical" expenses which were incurred for purely diagnostic evaluation not related to any ongoing treatment, and those incurred for diagnostic procedures which are "inseparably intertwined with an overall scheme of treatment."

We find nothing in the Act to compel the appellant's conclusion that the "neurological, orthopedic and x-ray examinations" are proper charges against the employer.

Chiropractors have been licensed since 1923. However, it was not until 1971 that the Legislature first directed payment by employers under Workmen's Compensation Law for limited chiropractic treatment of employees.

Legislative history demonstrates a legislative reservation clearly limiting the scope of activities for which chiropractors must be paid by the employer or his carrier under Workmen's Compensation Law.

Legislative Document #130 of the 105th Legislature (1971) was drafted in broad general terms to include payment for chiropractic treatment.[4] But this broad language was amended in committee.

Before it became law, the language was narrowed by Legislative Document #1615 of the 105th Legislature (1971). Here a new paragraph was inserted as a second paragraph, which reads as follows:

"An employee sustaining a personal injury by accident arising out of and in the course of his employment provided said injury consists of a lumbar, sacral or cervical strain shall be entitled to reasonable chiropractic treatment for the relief thereof. Such treatment shall consist of palpating and adjusting the segments and articulations of the human spinal column by hand. A duly licensed chiropractor shall be considered competent to testify before the Industrial Accident Commission."

This became the law effective September 23, 1971.[5]

The Legislature was careful in its choice of words to limit the scope of activities for which employers under the Workmen's Compensation Act must pay for an employee's injuries.

The first paragraph speaks of compensation for *medical and surgical services*, a term which would encompass diagnosis.

Had the Legislature intended, it could have employed the same word "services" to apply to compensation in regard to chiropractors.

Instead, it selected the word "treatment."

---

4. " . . . entitled to reasonable and proper medical, surgical and hospital services, nursing, medicines, and mechanical, surgical aids, and chiropractic treatment, . . . . "

5. We find nothing in the House debate, 1 Me.Leg.Rec. 1679–87 (1971), to compel the conclusion that diagnosis was included in the term "treatment."

The 1973 amendment does not affect this case.

Treatment was further limited to injuries consisting of lumbar, sacral, or cervical strain. The Legislature also described exactly of what the particular treatment might consist, i. e., "palpating and adjusting the segments and articulations of the human spinal column by hand."

The word "diagnosis" is not employed in either of the preliminary drafts, L.D. #130 or L.D. #1615, or in the statute as enacted.

We are not interpreting an ambiguous statute.

The law is clearly stated, and must be applied as it reads.

The entry must be,

Appeal denied.

All Justices concurring.

WERNICK, J., did not sit.