391 So.2d 17 (1980)
Betty POCHE, Plaintiff-Appellee,
v.
LOUISIANA HEALTH SERVICES & INDEMNITY COMPANY, Defendant-Appellant.
No. 7827.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1980.
Writ Refused January 16, 1981.
*18 Trimble, Randow, Smith & Wilson, Lon P. Wilson, Alexandria, for defendant-appellant.
Rivers & Willson, Larry W. Rivers, Alexandria, for plaintiff-appellee.
Before CULPEPPER, CUTRER and SWIFT, JJ.
CUTRER, Judge.
Betty Poche filed suit against Louisiana Health Services & Indemnity Company (Blue Cross) for the reimbursement of hospital and physician charges that she incurred while she was hospitalized at the Rapides General Hospital for a period beginning March 21, 1979 and ending March 24, 1979. Plaintiff also claimed penalties and attorney's fees. The trial court rendered judgment in favor of the plaintiff and against defendant for $2,226.00, including penalties and attorney's fees. Defendant appeals. We affirm.
The issues presented on appeal are: (1) Whether plaintiff's claim is excluded under the provisions of the Blue Cross hospital and medical care policy issued to the plaintiff; and (2) if coverage is found to exist, we have the issue of whether plaintiff is entitled to penalties and attorney's fees under LSA-R.S. 22:657.
In March 1979, plaintiff consulted Gutierrez, her physician since 1976, complaining of abdominal pains, cramping, intermittent diarrhea, constipation, rectal bleeding and urinary incontinence. She had been experiencing these problems for about three weeks prior to seeing Dr. Gutierrez. This physician examined plaintiff but was unable to determine the cause of her complaints, especially the rectal bleeding. He felt that such a condition could result from several causes including serious diseases such as polyp, carcinoma (cancer) or diverticulitis. The doctor, faced with this situation, recommended that she be hospitalized as soon as a room was available. The next day, March 21st, she was admitted to the Rapides General Hospital. After tests were made, Dr. Gutierrez's diagnosis was hemorrhoids. According to Dr. Gutierrez's testimony, plaintiff's treatment consisted primarily of proctosigmiodoscopy, x-ray studies, and mild to moderate analgesia for discomfort. The hospital records reveal that she was administered drugs on ten occasions during the three-day stay.
The defendant relies on the following exclusion as a bar to plaintiff's recovery. Article IX of the policy provides as follows:
"No services or benefits shall be provided for:
* * * * * *
"(e) Hospitalization primarily for diagnostic studies, x-ray examinations, laboratory examinations, basal metabolism tests, electrocardiograms, physical therapy."
To properly evaluate this coverage question, we feel that the provision of the policy that provides coverage should be set forth. Article III provides:
"1. ... A Subscriber who is admitted to a Member Hospital shall be entitled to receive hospital services, as provided by Article IV, for each Hospital Confinement:"
Article IV provides:

"1. A Subscriber who is admitted as an in-bed patient and confined to a bed in a Hospital shall be entitled to the following hospital services when consistent with the diagnosis and treatment of the condition for which hospitalization is required and only when such services are ordered by a Physician, furnished and *19 charged for by said Hospital and administered and used during such admission provided the Subscriber was not confined in a hospital on the effective date of the coverage; otherwise, coverage would commence upon discharge from the Hospital:"

Following the above coverage is a list of services which are covered. Among these services are laboratory examinations, medical supplies, drugs and medicines, x-ray examinations and other services.
Faced with the above coverage provision, along with the exclusionary clause in question, the trial court, in its reasons for judgment, made the following findings:

"... Plaintiff is a fifty year old woman. In the Spring of 1979 she visited her personal physician, Dr. M. E. Gutierrez, with complaints of lower abdominal pains, cramping, stress incontinance (urinal), diarhea [sic], and stools containing large amounts of blood. Dr. Gutierrez testified by deposition that he felt that plaintiff's condition warranted treatment in Rapides General Hospital. During the course of this treatment tests were run and medicines were administered [sic] to plaintiff, which aided her in overcoming her complaints.

"Counsel for the defense was very skillful in cross-examining Dr. Gutierrez in the deposition. Defense counsel phrased his questions in such a manner as to emphasize only the diagnostic aspect of the treatment plaintiff (Mrs. Poche) received. Dr. Gutierrez noted that the first step in treatment of any disease or injury is the diagnosis of the cause of same.

"The exclusion relied on by defendant is addressed to hospitalization `primarily' for diagnosis. In the instant case, plaintiff was admitted to the hospital with numerous serious physical problems. It was essential to the treatment of these problems that the cause thereof be determined. Dr. Gutierrez testified that the rectal bleeding plaintiff experienced could be caused by any number of diseases, from hemorrorids [sic], to cancer to diverticulitis. The cause of the bleeding was determined to be hemmorroids [sic], and the proper treatment, including medication, was prescribed. Plaintiff also was treated for her other physical complaints.

"Under these circumstance [sic], I do not feel that plaintiff's hospitalization was `primarily for diagnostic studies.' Rather I feel that plaintiff was hospitalized for treatment of serious physical problems. Diagnosis of the cause of these problems was merely part of this treatment."

The record supports the trial court's factual conclusions.[1]
*20 The services received by plaintiff at Rapides General were "consistent with," and was directed toward the diagnosis and treatment of the condition from which she had been suffering.
In Baque v. Pan American Life Insurance Company, 313 So.2d 293, 297 (La.App.3rd Cir. 1975), writs ref'd, 318 So.2d 52 (La. 1975), this court gave a broad definition to the word "treatment," as follows:

"Although the Louisiana jurisprudence reveals no case defining `treatment', we find applicable the following definition of that term by the courts of sister states: `In common parlance and often in the law, "treatment" is the broad term covering all the steps taken to effect a cure of the injury or disease. It includes examination and diagnosis, as well as application of remedies', Hester v. Ford, 221 Ala. 592, 130 So. 203, 206 (1930). See also Stephens v. Williams, 226 Ala. 534, 147 So. 608 (1933); Kirschner v. Equitable Life Assurance Society, 157 Misc. 635, 284 N.Y.S. 506, 510 (1935); Permanent Edition, Words and Phrases, Volume 42A, Treatment, p. 45. We believe that the foregoing definition of the word `treatment' accords with logic and common sense."

Under the broad definition of "treatment" in Baque, and the evidence in the record, we fully agree with the trial judge's conclusion that the exclusionary provision of defendant's policy is not applicable.
The defendant relies on the case of Niles v. American Bankers Insurance Company, 258 So.2d 705 (La.App.3rd Cir. 1972). That case is distinguishable from the one at hand in that Mrs. Niles' doctor testified that she was hospitalized for "observation and tests" and the trial judge thus concluded that she was hospitalized principally for the purpose of diagnosis.

PENALTIES AND ATTORNEY'S FEES
The second issue to be dealt with is the award of penalties and attorney's fees. Defendant contends that the trial court was in error in its application of LSA-R.S. 22:657 to this case. In support of this contention, counsel cites Tabb v. La. Health Services & Indem. Co., 361 So.2d 862 (La.1978), and several of its progeny from this circuit. However, the more recent expression of the Louisiana Supreme Court, Rudloff v. Louisiana Health Services & Indem., 385 So.2d 767 (La.1980), overrules Tabb and holds that a policy which provides benefits for hospital and medical care is a health policy. Since this is a health policy, the trial court was correct in its application of LSA-R.S. 22:657.
Under that statute, a penalty of double the amount of the benefits due and attorney's fees are to be awarded when a claim properly submitted is not paid within thirty days, "unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist."
Whether the insurer denied plaintiff's claim, on just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, is a question of fact.
We have carefully examined the record and have concluded that the trial court erred in granting plaintiff penalties and attorney's fees under the circumstances presented. The defendant obtained the hospital records of plaintiff and submitted them to two physicians for a review. After such a review, the report of each of these physicians shows that they were of the opinion that the hospitalization of the plaintiff was primarily for diagnostic studies. They also concluded that hospitalization was not required for the administering of the medications that were given. The defendant was under a duty to determine, by an honest and sincere effort, whether plaintiff's hospitalization was primarily for diagnostic studies. After an evaluation of the physicians' reports and the hospital records, it concluded that plaintiff's hospitalization was primarily for diagnostic studies. Even though we have ruled otherwise herein, we conclude that defendant's refusal to pay the claim cannot be classified as unreasonable or unjust. For these reasons, we shall reverse the trial court's award of penalties and attorney's fees.
*21 For the above and foregoing reasons, the judgment of the trial court is reversed so far as it awards penalties and attorney's fees and is affirmed in all other respects. Costs of this appeal are assessed one-half to plaintiff-appellee and one-half to defendant-appellant.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] Dr. Gutierrez testified as follows:

"Q. And you were of the opinion that based on the complaints of cramping lower abdominal pain, bright red blood with stools, and some mixed with stools, and intermittent diarrhea and constipation that it was medically necessary that you admit her to the hospital?
"A. Yes.
"Q. And how long did she remain hospitalized?
"A. I think she was in the hospital for three days-you can say three or four, depending on whether you count the day of discharge.
"Q. And while she was in the hospital what type treatment regime did she undergo?
"A. Her treat [sic] was primarily that of proctosigmiodoscopy, x-ray studies, mild to moderate analgesia for discomfort-she was under no course of specific therapy for her complaints other than what I've stated.
* * * * * *
"Q. And after you examined her in your office on March 20th, you recommended to her that she be admitted to the hospital for treatment of the complaints that she gave you at the time as well as for perhaps assistance in diagnosing what the actual root cause of the problem was-Would that not be a true statement?
"A. I think that's true, yes.
"Q. And would it not be a true statement that when you admitted her to the hospital you intended to treat her for those complaints?
"A. Oh certainly, yes.
"Q. And I believe the hospital records show that you did in fact give her certain medication for pain. Did you not?
"A. Yes.
"Q. Would it be a true statement to say that the medications you gave her for pain were for treatment of the abdominal pain of which she was complaining when you saw her on March the 20th?
"A. Well, yes, that certainly sounds-would be true, yes."