414 So.2d 1333 (1982)
Ray N. BOYLE, Jr., et ux., Plaintiffs-Appellees,
v.
FRINGE FACTS, INC. et al., Defendants-Appellants.
No. 14822.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1982.
*1334 Kitchens, Benton, Kitchens & Pearce by John B. Benton, Jr., Minden, for plaintiffs-appellees.
Conner, Martinez & Miles by William W. Miles, Metairie, for defendants-appellants.
Before PRICE, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Defendants, Business Insurance Life of America and Fringe Facts, Inc., appeal a judgment rendered against them for benefits under a group hospitalization insurance policy as well as penalties and attorney's fees.
Ray N. Boyle, Jr., was a lifetime member of the Louisiana Pharmacists Association and in January, 1979, was a practicing pharmacist, owning and operating Boyle's Walgreen Drug in Minden, Louisiana. In December, 1978, Mr. Boyle was contacted by a representative of the Louisiana Pharmacists *1335 Association concerning his participation in a group hospitalization insurance plan for members of the association, their dependents, and employees. After discussing the matter with the representative, he decided to participate in the plan and began making payments for coverage which he continued to make through April, 1980.
In May, 1979, Mr. Boyle was notified that Business Insurance Life of America had agreed to insure the participants in the association's plan, and that he would receive information in confirmation of this change of insurer. Thereafter, he received a booklet explaining the coverage and the applicable rates as well as an application which Mrs. Boyle, his bookkeeper, completed. In filling out this form in the space designated for name of the business, Mrs. Boyle put "Boyle Drug Store (Inactive)." In the space designated for nature of the business, she stated "retired (Retail Drug)." This form was signed and returned to Business Insurance Life of America. Effective June 1, 1979, the Louisiana Pharmacists Association changed its group coverage to Business Insurance Life of America. Thereafter, Mr. Boyle received by correspondence dated July 16, 1979, from Business Insurance Incorporated the certificate of insurance and supplies for this group coverage.
The information which Mr. Boyle received indicated that the group plan was for members, their employees and their dependents. When Mr. Boyle discussed the possibility of joining the group plan in question, he explained to the representative of the association that the store which he owned and operated at that time was for sale. He was assured that he would be covered under the plan even if he did sell his business as long as he maintained his membership in the association.
Mr. Boyle ceased being an active pharmacist in June, 1979, but continued his membership in the Louisiana Pharmacists Association and continued to make timely payments for insurance coverage. Premium payments were made in accord with the directions received from the various defendants in this case. During this time period Mr. Boyle became ill and was hospitalized incurring medical bills in the amount of $8832.20 in July, 1979. Claims were submitted for the payment of these bills which were refused by Business Insurance Life of America. In April, 1980, Mrs. Boyle was hospitalized for illness and incurred bills totalling $2875.85. Again, Business Insurance Life of America refused payment of these bills on the basis that the participation agreement to Business Insurance Trust specifically stated that only full time employees and their dependents were eligible for coverage under the plan. In the correspondence dated February 8, 1980, denying coverage, Business Insurance Life of America recognized that the participation agreement signed by Mr. Boyle indicated that the Boyle Drug Store was dissolved and inactive. Nevertheless, monthly statements were sent to Mr. Boyle through April, 1980, and payments were timely made.
Thereafter, plaintiffs on February 6, 1981, instituted this suit against Fringe Facts, Inc., Business Insurance Life of America, Business Insurance, Incorporated and Business Insurance Trust, alleging that plaintiff was a lifetime member of the Louisiana Pharmacists Association and in January, 1979, was a practicing pharmacist and that during January, 1979, plaintiffs had joined a group insurance program sponsored by the Louisiana Pharmacists Association. It was further alleged that the plan was originally underwritten by Key Life Insurance Company but that in April, 1979, American Public Life Insurance became the insurer of the plan. It was further alleged that during July, 1979, plaintiffs had received a pamphlet from Business Insurance Trust which stated that Business Insurance Life of America had insured plaintiffs effective June 1, 1979, under group policy number SB 04635. It was further alleged that in January, 1980, Fringe Facts, Inc., notified plaintiffs that it had become the insurer effective January 1, 1980, and that there would be no lapse in their coverage. They further alleged on information and belief that Fringe Facts, Inc., was now the owner of Business Insurance Life of America, Business Insurance Incorporated and Business Insurance Trust and had contractually and/or otherwise obligated itself to *1336 and/or had assumed and agreed that it would pay all claims asserted against those entities therefore making all defendants liable jointly and solidarily unto petitioners for the amounts claimed for the unpaid medical bills plus statutory penalties and attorney's fees.
Personal service was made on all defendants through their agent for service of process. Thereafter, Fringe Facts, Inc., and Business Insurance Life of America answered the petition in the form of a general denial. Further contained within their answer was the allegation that Fringe Facts, Inc. did not own Business Insurance Life of America, Business Insurance Incorporated and Business Insurance Trust but was merely a third party administrator by contract with Business Insurance Life of America only. Fringe Facts, Inc. contended that it had not assumed nor agreed to pay any claims asserted against those entities. Defendant Business Insurance Life of America further pled that at all times pertinent and material, it was the subject of a conservation and/or rehabilitation suit under the auspices of the Commissioner of Insurance of the State of Louisiana and specially pled said lawsuit in bar of statutory liability for penalties or attorney's fees.
Defendants, Business Insurance Incorporated and Business Insurance Trust, neither answered the lawsuit nor appeared. A preliminary default was entered and judgment later obtained against those defendants. Neither has appealed, and we do not consider the judgment as to either of those defendants.
After trial, the trial court in written reasons for judgment found in favor of plaintiff and stated as follows:

* * * * * *
The evidence clearly shows that the Boyles furnished all the information requested by the defendants in connection with the issuance of the insurance policy. No misrepresentation was made. No information was withheld. The fact that the policy was issued based on information furnished by the Boyles is evidence that the policy was intended to cover him and his dependent. Defendants simply cannot come in months later and say they did not intend to cover him as was attempted by the February 8, 1980 letter.
Since the policy was validly issued, it continued in force and effect until it was cancelled or terminated. The letter of February 8, 1980 and the letter of April 11, 1980 which refers to it do not establish that this coverage was cancelled. It is true that liability for the claim is denied (which denial was improper), but policy premiums continued to be sent by the defendants and paid by the plaintiffs. The policy was not cancelled or terminated before the medical expenses involved in this lawsuit were incurred.
In the opinion of the Court the evidence establishes that the total of the two claims amounts to the sum of $10,147.88 and plaintiffs are entitled to judgment in that amount plus legal interest from date of judicial demand until paid and for all costs of these proceedings.
Considering the facts of the case in connection with the statutes and jurisprudence cited by both counsel, the court is of the opinion that defendants are also liable for penalties and attorney's fees. If the coverage provided is health and accident coverage as defined in R.S. 22:6, then the penalty would be double the amount due as provided by R.S. 22:657. If the coverage is something other than health and accident coverage the penalty will be 12% of the amount due as provided by R.S. 22:658. The fact that the defendant Business Insurance Life of America is the subject of a conservation/rehabilitation suit filed by the Louisiana Commissioner of Insurance has no bearing on whether plaintiffs are entitled to penalties in this case.
While the record does not contain a policy of insurance as such, the certificate of coverage and the booklets and summary of benefits, filed in the record do establish that the coverage provided by defendants in this case was health and accident coverage as defined by R.S. 22:6. Accordingly, there should be judgment in favor of the plaintiffs for an additional $10,147.88 as statutory penalties.

*1337 The statute also provides for reasonable attorney's fees which are hereby set at the sum of $2600.00.
Judgment was signed in accordance with these reasons for judgment on July 30, 1981, against all defendants jointly and in solido. It is from this judgment that defendants Fringe Facts, Inc. and Business Insurance Life of America appeal, citing two specifications of error, to-wit: (1) Plaintiffs failed to prove by a preponderance of the evidence that Fringe Facts, Inc. was liable to them for any part of the amount sought; and (2) that the trial court erred in applying La.R.S. 22:657 to this case and awarding penalties equal to the amount of benefits due under the policy sued upon.
We will address these specifications of error in reverse order dealing first with the applicability of La.R.S. 22:657 to the instant case.
La.R.S. 22:6 provides as follows in pertinent part:
Insurance shall be classified and defined as follows:

* * * * * *
(2) Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.
* * * * * *
La.R.S. 22:657 provides as follows:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.
B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from date of receipt of due proof of death by the insurer until paid.
C. Any person, partnership, corporation or other organization; or the State of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders or any other persons, shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney fees, without regard to whether the person or organization is a commercial insurer provided, however, this Section shall not apply to collectively bargained union welfare plans other than health and accident plans.
Appellant argues that hospitalization insurance is not the type of insurance which is referred to by this statute contending that the statute only applies to disability insurance. We disagree. The Louisiana Supreme Court in Rudloff v. La. Health Services and Indemnity Co., 385 So.2d 767 (La.1980), has specifically held that a policy providing for hospital and medical care is a health and accident policy. Although the issue of penalties and attorney's fees was not specifically before the court in Rudloff, subsequent cases have held that La.R.S. 22:657 is the controlling statute for such policies. Peters v. Life General Security Ins. Co., 400 So.2d 1103 (La.App. 1st Cir. 1981); Lucito v. La. Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir. 1980); and Poche v. La. Health Service & Indemnity, *1338 391 So.2d 17 (La.App. 3rd Cir. 1980). See also Conner v. B.I.L.A., 414 So.2d 1340, handed down on this same date wherein we addressed this same issue and arrived at the same conclusion.
Appellant Business Insurance Life of America does not question the correctness of any aspect of the judgment rendered against it other than the imposition of the statutory penalties and attorney's fees as provided by La.R.S. 22:657. Accordingly, the judgment obtained against Business Insurance Life of America is affirmed.
Appellant Fringe Facts, Inc., contends that there is insufficient evidence in the record to form the basis for the imposition of a judgment against it. Fringe Facts, Inc. further asserts that plaintiffs offered no proof that the basis of their claim lay under any theory of law other than contract, and that the only contractual relationship proved at trial was that between plaintiffs and Business Insurance Life of America. Succinctly stated, the position of Fringe Facts, Inc. is that the evidence only establishes that Fringe Facts, Inc. was the claims administrator for Business Insurance Life of America. We agree that the evidence presented at trial is insufficient to prove that a contract existed between plaintiffs and Fringe Facts, Inc. There is no evidence of any contractual relationship between these two parties.
However, plaintiffs suggest to the court that the evidence presented does prove that the relationship created between Fringe Facts, Inc. and Business Insurance Life of America meets all of the requirements of a "suretyship agreement" and that under the obligations of a surety towards a creditor, Fringe Facts, Inc. should be held solidarily liable with Business Insurance Life of America.
Suretyship is defined in Article 3035 of the Louisiana Civil Code:
Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation if the debtor does not.
A contract of guaranty is equivalent to a contract of suretyship, and the two terms may be used interchangeably. A surety's contract need not observe technical formalities, but it must contain an absolute expression of an intent to be bound. Ball Marketing Enterprise v. Rainbow Tomato Co., 340 So.2d 700 (La.App. 3rd Cir. 1976). It is an accessory promise by which one binds himself for another already bound and agrees with the creditor to satisfy the obligation if the principal debtor does not do so. American Indemnity Co. v. Robertson, 309 So.2d 737 (La.App. 4th Cir. 1975). An agreement of suretyship must be in writing to be provable and must be explicit. Boro Industries, Inc. v. James J. Culotta, Inc., 336 So.2d 878 (La.App. 4th Cir. 1976). Parol evidence may not be used to establish either a suretyship or a promise to pay the debt of another even when admitted at trial without objection. Altex Ready-Mixed Concrete Corp. v. Employers Commercial Union Ins. Co., 308 So.2d 889 (La.App. 1st Cir. 1975).
La. Civil Code Article 3039 further explains the contract of suretyship and provides:
Suretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract.
Therefore, it is apparent under the aforediscussed statutes and jurisprudence that we can only consider the "writings" involved in the instant situation in order to determine if a suretyship relationship or a continuing guaranty existed which would result in Fringe Facts, Inc.'s being liable to plaintiffs. The only written evidence adduced at trial concerning the claim of plaintiffs against Fringe Facts, Inc. consists of certain letters and billing statements received by plaintiffs from representatives of Fringe Facts, Inc.
Our review of the evidence reveals that two letters and one "Read & Reply" were received by plaintiffs from Fringe Facts, Inc. One undated letter begins "Dear Policyholder: As administrators of your group insurance program, we are striving to provide you with the most accurate and efficient service available. * * *" We construe *1339 this letter as clearly establishing Fringe Facts, Inc's position as administrators of the program. Another letter dated January 2, 1980, from Janel Crump, Administrative Assistant, contains the only language which could possibly be construed as an expression of intent to be bound to make the payments due and owing to plaintiffs. This letter reads as follows:
Dear Insured:
Enclosed please find the Group Life and Health billing statement for employees of your company under the new Trust insured by the Business Insurance Life of America, Monroe, Louisiana.
We have made every effort to duplicate benefits as to types of coverages your company had with the Business Insurance Trust. If we have failed to include or exclude someone or incorrectly assumed coverages, please make a notation on your billing when making payment. Adjustments will be reflected on your February billing.
Please note that there will be no lapse in coverage with your conversion. The new plan became effective January 1, 1980. Please review the Schedule of Benefits on the reverse side of this letter. All claims incurred prior to January 1, 1980, will be honored and paid under the Business Insurance Trust Schedule of Benefits.
New employee booklets, certificates, and claims administration kits will be forthcoming within the next few weeks. You may continue to use the forms you currently have, the only change we request is that you address your correspondence to:
Fringe Facts, Inc. P. O. Box 23532 Tampa, Florida 33623
If you have further questions regarding this matter, please refer them to me at (813) 870-1510.

* * * * * *
While possibly ambiguous, this letter in our opinion cannot be construed as containing language sufficient to evidence an absolute expression of intent to pay the contractual debt of Business Insurance Life of America. This is particularly true when this letter is read in conjunction with the undated letter identifying Fringe Facts, Inc. as administrator of the group insurance plan. Our conclusion is also bolstered by the billing statements entered into evidence which specifically provide that all checks are to be made payable to "B. I. L. of America." The special rule laid down in Article 3039 must control this situation, and that rule is clearly that a contract of suretyship or guaranty cannot be presumed. See Exchange National Bank v. Waldron, 177 La. 1015, 150 So. 3 (1933); Ball Marketing Enterprise v. Rainbow Tomato Co., supra.
Therefore, we conclude that plaintiff's argument that the evidence presented at trial is sufficient to prove a suretyship agreement is without merit.
However, alternatively, plaintiffs argue in their brief that Fringe Facts, Inc. neglected to inform them that all assets of Business Insurance Life of America were in the possession of the Commissioner of Insurance, who by statute, i.e., La.R.S. 22:736 could at any time apply to the court for an order directing the liquidation of the property. They argue that Fringe Facts, Inc. continued to urge policyholders to continue their insurance program with an entity that obviously was in a precarious position with the Commissioner of Insurance, and whose claims may or may not be paid by Business Insurance Life of America, although Fringe Facts, Inc., would collect all of the premiums and would thus be rewarded no matter how the policyholder eventually fared. They urge that Fringe Facts, Inc. was at the very least negligent or imprudent in not imparting all of the facts to the policyholders. They further submit that Fringe Facts, Inc. should be found solidarily liable under the provisions of La. Civil Code Article 2316 or 2324.[1] However, there is insufficient *1340 evidence in the record to prove that there is a factual basis to support this conclusion. In fact, we find no evidence whatsoever in the record in support of this contention which was not even pled by plaintiffs in their original petition. The only allegation in the record regarding the conservation order prior to trial is an allegation in the defendants' answer in response to plaintiffs' plea for statutory penalties and attorney's fees. We note that plaintiffs did no further investigation regarding this assertion after the answer[2] and that the Commissioner of Insurance was not made a party to this suit.[3]
We conclude therefore that the record is devoid of any evidence which could support any legal basis for holding Fringe Facts, Inc. liable to plaintiffs either under a theory of contract as originally pled by plaintiffs or otherwise. Since the trial court's ruling in this regard is clearly wrong, we reverse that portion of the judgment rendered against Fringe Facts, Inc.
Accordingly, for the foregoing reasons the judgment against Business Insurance Life of America is affirmed in its entirety. The judgment rendered against Fringe Facts, Inc. is reversed, and judgment is rendered in favor of Fringe Facts, Inc. against plaintiffs, Ray N. Boyle, Jr. and Verlyn M. Boyle, rejecting plaintiffs' demands against Fringe Facts, Inc. All costs of this proceeding are assessed equally between plaintiffs and appellants.
JUDGMENT AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.
NOTES
[1] La. Civil Code Article 2316 provides as follows:

Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
La. Civil Code Article 2324 provides as follows:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
[2] We note in our review of the record that plaintiff directed certain interrogatories to defendants which interrogatories were answered. However, the answers to the interrogatories provided little, if any, useful information to plaintiffs. We note further that the record does not reflect that plaintiffs made any effort to traverse these answers. We also note that there was no one subpoenaed from Fringe Facts, Inc., or any of the other defendants to testify, nor was any evidence elicited regarding the alleged conservation order.
[3] We further note that under the provision of La. Code of Civil Procedure Article 741, the proper defendant in this action should have been the Commissioner of Insurance as the court appointed receiver of Business Insurance Life of America; however, this issue was never raised by any of the parties.