184 So.2d 140

**Bobby Williamson STEVENS, Adm'x,**

**v.**

**E. O. THOMPSON.**

**7 Div. 605.**

Supreme Court of Alabama.

March 10, 1966.

Embry & Whitten, Pell City, Fred Blanton, Birmingham, for appellant.

Starnes & Holladay, Pell City, for appellee.

GOODWYN, Justice.

Appellee brought suit against appellant to recover damages for injuries allegedly received by him when shot by appellant's intestate. The case was tried without a jury, with the testimony, except for depositions of medical witnesses, being taken orally before the trial court. There was judgment for $10,000 in favor of appellee. This appeal was taken from that judgment, after the overruling of appellant's motion for a new trial.

The case was submitted here on appellee's motion to strike the transcript of the record and dismiss the appeal (because said transcript was not timely filed in this court) and on the merits. Our conclusion is that the motion is due to be denied and the judgment affirmed.

### Motion

The appeal was taken on March 7, 1963. Accordingly, in the absence of an extension of time for filing, the transcript of the *evidence* should have been filed by the court reporter with the circuit clerk within sixty days thereafter, the appeal having been taken after the ruling on appellant's motion for a new trial. Sections 1 and 6 of Act No. 461, appvd. July 12, 1943, Gen. Acts 1943, p. 425, as amended by Act No. 97, appvd. Feb. 9, 1956, Acts 1956, Vol. I, p. 143; § 2 of Act No. 461, supra, as amended by Act No. 886, § 2, appvd. Sept. 12, 1951, Acts 1950–51, Vol. II, p. 1527; Recompiled Code 1958 (unofficial), Tit. 7, §§ 827(1), 827(1a) and 827(4).

Sections 827(1) and 827(4) require the filing of the transcript of the *evidence* with the clerk within sixty days from the date on which the appeal was taken, or within sixty days from the date of the court's ruling on the motion for a new trial, whichever date is later.

Section 827(1a) provides as follows:

"The period of time within which the reporter must file the transcript may be extended by the trial court for cause. Within ten (10) days after the filing with the clerk of the certified transcript by the court reporter, either

party may file with the clerk objections to the certified transcript, with his certificate that he has notified the opposing party, or attorney of record, that the same will be called to the attention of the trial court at a specified time and place. If no objections are filed within such ten (10) days the transcript shall be conclusively presumed to be correct. * * * "

On the sixty-first day the reporter requested the trial court to extend the time for filing. The extension was granted. Other extensions were requested and granted until the transcript of the *evidence* was filed with the circuit clerk on October 22, 1963.

■ In construing §§ 827(1), 827(1a) and 827(4), it has been held that "the trial court's power to grant an extension of time is not extinguished or cut off by the mere expiration of the sixty day period immediately following the date on which the appeal is taken." See: Johnson v. State, 269 Ala. 1, 3, 111 So.2d 610, 611. This case also holds that these statutes place "no limitation on the length of the extension of time which may be granted by the trial court" and that "the length of the extension is to be limited only by what is reasonable." The court said:

> "We construe the statute as conferring on the trial court the power to enter an order granting a reasonable extension, even after the expiration of the original sixty day period, provided the delay is not shown to be due to the fault of the appellant, or his attorney, and it is not shown that the appellee has been prejudiced by the delay."

The motion to strike does not challenge the reasonableness of the extensions granted.

■ The transcript of the *evidence* was timely filed with the clerk of the trial court on October 22, 1963.

The time for filing the transcript of the *record* (which includes the transcript of the *evidence*) with the clerk of the Supreme Court, where bills of exceptions have been abolished, is "within sixty days after the transcript of the evidence has been established in the court below," unless the time for filing is extended. Rule 37, Revised Rules of Practice in the Supreme Court, 261 Ala. XIX, XXXIII.

The transcript of the *evidence* becomes established when it is filed with the clerk of the trial court, if no objections thereto are filed with the clerk within ten days after the filing of the transcript with the clerk. Section 827(1a), Tit. 7, Recompiled Code 1958, supra; Wanninger v. Lange, 268 Ala. 402, 405, 108 So.2d 331; Hornbuckle v. State, 268 Ala. 347, 105 So.2d 864. Here, there were no objections. Accordingly, the transcript of the *evidence* was established when it was filed with the clerk on October 22, 1963; and the transcript of the *record* was filed with the clerk of the Supreme Court on November 15, 1963, within the sixty days prescribed by Supreme Court Rule 37.

The motion to strike the transcript of the *record* and to dismiss the appeal is denied.

### The Merits

■ This case arose out of a gun battle on a street in Pell City, Alabama. Appellee, a Pell City police officer at the time of the incident, brought this action against the administratrix of the estate of Graves T. Williamson for injuries received when he was "wilfully, wantonly, unlawfully or wrongfully" shot by Williamson. Appellant interposed a plea of recoupment alleging appellee's indebtedness to appellant for that appellee wrongfully caused Williamson's death by wrongfully shooting him with a pistol.

The principal ground relied on by appellant for reversal is that the judgment is against the great weight and preponderance of the evidence. This was one of the

grounds of appellant's motion for a new trial, the denial of which is assigned as error.

The chain of events terminating in appellee's injury and Williamson's death began when Williamson's former wife, Mrs. Virginia Keener, received a telephone call from Williamson while she was at her job in Leeds, Alabama. After this call, she left her job to return to her home in Pell City. She got out of the car a short distance from her house and started walking toward it. As she drew abreast of the Mink Carreker residence, which was about a block and a half from Mrs. Keener's house, Mrs. Carreker called to her. Mrs. Keener then saw Williamson walking up and down the sidewalk in front of her (Mrs. Keener's) house. He had a shotgun over his shoulder. She and Mrs. Carreker ran into the Carreker house. Mrs. Keener attempted to telephone the police. Failing to make contact, she telephoned C. W. Scott, Jr., the city recorder. Scott dispatched appellee to the scene to make an investigation. Appellee picked up Terry Turner, another police officer, and drove to Mrs. Keener's residence. Upon arriving there, they saw Williamson sitting on the bed of his pickup truck, which was parked in the street in front of Mrs. Keener's house. Appellee stopped the police car at an angle to the back of the truck. Appellee was not permitted to testify as to the actual shooting, on appellant's objection that such testimony would be inadmissible under the "Dead Man Statute," Code 1940, Tit. 7, § 433. Turner's testimony is incomplete and somewhat self-contradictory. (This, in some measure, could be due to the fact that counsel for appellant, during the witness' direct examination by counsel for appellee, reminded Turner several times that he could invoke the privilege against self-incrimination, and urged him to do so, apparently on the theory that appellee might be indicted for the murder of Williamson and that Turner might be an accomplice). Both Mrs. Keener and Mrs. Carreker testified that when the police car stopped, Williamson stood up and pointed his shotgun at it. Then shots were heard. Turner testified that he was familiar with the difference between the sounds of shots fired from a shotgun and from a pistol, and that the first shot was fired from a shotgun. Both Turner and appellee were armed with .38 caliber revolvers. In the ensuing fusilade, Turner and appellee were wounded by "pumpkin balls" from a shotgun. Williamson was shot dead, apparently by appellee. There is no evidence that either officer attempted to place Williamson under arrest. Turner did not get out of the police car prior to being shot, and the evidence is not clear whether appellee did.

We think the evidence is sufficient to sustain the judgment.

Appellant argues that appellee was the aggressor in that he attempted to wrongfully arrest Williamson, and that Williamson acted only in self-defense. As pointed out above, there is no evidence that any attempt at arrest was made, nor that the officers did anything other than drive up in the car before being shot.

Appellant also attacks the credibility of the witnesses, all of whom were called by appellee. The following from Cox v. Logan, 262 Ala. 11, 13, 76 So.2d 169, 171, is equally applicable here:

"* * * The witnesses were examined orally before the court, and the Judge had the benefit of observing their manner and demeanor and the better opportunity to pass upon the credibility of the testimony. His finding has the force of a verdict by a jury. Such a judgment will not be disturbed unless plainly erroneous and manifestly wrong. We cannot say that the judgment in this case is plainly erroneous or manifestly wrong. * * *"

What has been said is also dispositive of appellant's contention that the court erred in denying relief on her plea of recoupment.

■ Appellant assigns as errors several rulings of the court in admitting certain testimony of appellee, over appellant's objection that appellee was incompetent to so testify under the provisions of the "Dead Man Statute," Code 1940, Tit. 7, § 433, supra. An instance of the testimony complained of, with objections and rulings omitted, is as follows:

"Q. And where were you when you first saw him [referring to Williamson]?

"A. I was in the police car when I first saw him.

"Q. How far were you from him when you first saw him?

"A. Well, I—my best recollection we was along about the schoolhouse when I first got a good view at him."

Assuming, without deciding, that the statute renders appellee incompetent to so testify in support of his complaint, it does not follow that the testimony is inadmissible in this case. Appellant's plea of recoupment seeks to recover from appellee for the wrongful death of Williamson. The statute declares a person having a pecuniary interest in the result of the suit incompetent to testify "as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit." Code 1940, Tit. 7, § 433, supra. However, in an action for wrongful death under Code 1940, Tit. 7, § 123, the prohibition in § 433, does not apply because the estate of the deceased person is not "interested in the result of the suit." The damages recoverable in such suit are not assets of the estate, but are paid directly to the distributees by the personal representative. See: Hatas v. Partin, 278 Ala. 65, 175 So.2d 759, 761; Atlantic Coast Line R. Co. v. Flowers, 241 Ala. 446, 451, 3 So.2d 21; Stephens v. Williams, 226 Ala. 534, 538, 147 So. 608; Kuykendall v. Edmondson, 205 Ala. 265, 267–268, 87 So. 882; Holt v. Stollenwerck, 174 Ala. 213, 216, 56 So. 912; Kennedy v. Davis, 171 Ala. 609, 612, 55 So. 104; Louisville &

Nashville R. R. Co. v. Street, 164 Ala. 155, 158, 51 So. 306; Anno.: "Competency of witness in wrongful death action as affected by dead man statute," 77 A.L.R.2d 676, 692 (§ 6). Therefore, even if the testimony was inadmissible in support of appellee's claim, it was admissible in defense of appellant's plea of recoupment. There was no error in the ruling of the trial court.

In Hardin v. Sellers, 270 Ala. 156, 159, 117 So.2d 383, it was said that the recovery under the Homicide Statute (Code 1940, Tit. 7, § 123) "does not go to the wife or the husband, but to the estate of the decedent as stated in South & North Alabama Railroad Co. v. Sullivan, supra, 59 Ala. [272] at page 279:

" 'To whom does the compensation go? Not to the husband, wife or child. The statute contains no provision that the recovery shall go to these. It shall be "distributed as personal property of an intestate is now distributed." That is, it goes to the estate of the decedent, with the limitation, that the fund "shall not be subject to the payment of the debts of the deceased".' "

These statements that a recovery under the Homicide Statute goes to the estate of the decedent are in conflict with the foregoing authorities (holding that damages recoverable under the Homicide Statute are not assets of the estate) and will not be followed.

■ Appellant also insists that the judgment is excessive. We find no basis for so holding. Aside from any other consideration bearing on a review of this question, the serious nature of appellee's injuries and his permanent disability amply support the award.

■ Some of the assignments of error have not been substantially argued and, therefore, must be considered as waived. Rule 9, Revised Rules of Practice in the Supreme Court, 261 Ala. XIX, XXII, provides that: "Assignments of error not sub-

stantially argued in brief will be deemed waived and will not be considered by the court."

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL, COLEMAN and HARWOOD, JJ., concur.

SIMPSON, Justice (specially concurring).

I agree with the conclusions of the foregoing opinion.

It would seem that the quoted statement in South & North Alabama Railroad Co. v. Sullivan, 59 Ala. 272, at page 279, could be at variance with the rule of the other cases.