442 So.2d 29 (1983)
Roy Ronald LOWE, etc.
v.
Roy FULFORD and Leah Fulford, etc.
81-464.
Supreme Court of Alabama.
October 7, 1983.
Rehearing Denied December 9, 1983.
*30 Edward F. Morgan, Tuscaloosa, and C.O. Burkhalter, Gordo, for appellant.
Olin W. Zeanah and Wilbor J. Hust, Jr., of Zeanah, Donald & Hust, Tuscaloosa, for appellees.

*31 ON APPLICATION FOR REHEARING
BEATTY, Justice.
The original opinion in this case, dated June 3, 1983, is withdrawn, and the following opinion is substituted therefor.
This appeal concerns the question of which party or parties should receive the balance of proceeds recovered from two wrongful death actions. Following a declaratory judgment in favor of the defendants, plaintiff appeals. We affirm in part, reverse in part, and remand.
This controversy involves only issues of law, and the following facts are undisputed.
On September 17, 1973, Elva Fulford and her daughter, Lou Anne Fulford Lowe, were involved in a one-car accident. As a proximate result of the accident, Elva Fulford died on September 17 and her daughter died three days later on September 20. Fulford was survived by her husband, Roy Fulford, and two daughters, Leah Fulford and Lou Anne Fulford Lowe. Lou Anne Fulford Lowe was survived by her husband, Roy Ronald Lowe, a sister, Leah Fulford, and her father, Roy Fulford.
For ease of discussion we refer to the two estates as the "Fulford Estate" and the "Lowe Estate." Roy Fulford was appointed administrator of the Fulford Estate, and Roy Ronald Lowe was appointed as administrator of the Lowe Estate.
Separate wrongful death actions were filed by the administrators against General Motors Corporation (GMC) in the Circuit Court of Tuscaloosa County in January 1974. These cases were removed to the United States District Court for the Northern District of Alabama and were consolidated for trial. A jury verdict was rendered in favor of each administrator against GMC. Later, GMC was granted a new trial, which resulted in a judgment in each case in favor of GMC. Following appeal by each administrator to the Fifth Circuit Court of Appeals, each case was reversed, and the original judgment reinstated, but the cases were remanded to the trial court. The trial court remitted the original jury verdict by fifty percent, and final judgments were entered against GMC and in favor of each administrator. Initial distributions, including cost of litigation and uncontested sums distributed to the surviving heirs, have been made and those payments are not contested here.
Roy Ronald Lowe, individually and as administrator of the Lowe Estate, filed a petition for declaratory judgment to determine who was entitled to the balance of the proceeds recovered in the two wrongful death actions. Generally the plaintiff claims he is entitled to all the Lowe Estate, of which he has already received one-half, and to one-fourth of the Fulford Estate. The Circuit Court of Tuscaloosa County ruled that defendant Leah Fulford was entitled to the balance of proceeds from the Fulford Estate and that defendants Roy Fulford and Leah Fulford were entitled to the balance of the Lowe Estate. The court further found that Roy Ronald Lowe had received all he was entitled to from the Lowe Estate and was not entitled to any of the proceeds at issue designated to the two estates.
The question for this Court to determine is who is entitled to the remaining onefourth of the proceeds recovered from the wrongful death action allocated to the Fulford Estate and the remaining one-half of the proceeds recovered from the wrongful death action allocated to the Lowe Estate. No other monies are questioned by the plaintiff.

The Fulford Estate
The plaintiff contends that he is entitled to the one-fourth of the proceeds designated to the Fulford Estate through Lou Anne Fulford Lowe. We agree with plaintiff's argument that at the time of Mrs. Fulford's death the heirs at law entitled to share in her inheritable estate included Lou Anne Lowe. Heirs are determined at the time of death. White v. Fowler, 245 Ala. 209, 16 So.2d 399 (1944). We cannot agree, however, that the Lowe Estate was entitled to receive any of the monies recovered in the wrongful death *32 action brought on behalf of Mrs. Fulford. Because Mrs. Lowe died some four months before the wrongful death action was filed and almost two years before the initial judgments were entered in June of 1975, she had no property right in the wrongful death cause of action. Mrs. Lowe's right was personal and ceased to exist upon her death.
We recognize that there are two lines of authority concerning whether the death of a beneficiary prior to the commencement of a wrongful death action forecloses recovery in favor of the beneficiary's estate. However, due to the punitive nature of the Alabama Wrongful Death Statute, we conclude that where a beneficiary dies prior to the commencement of an action, that beneficiary's estate is not entitled to any of the damages recovered. Holt v. Stollenwerck, 174 Ala. 213, 56 So. 912 (1911), although not directly on point, provides guidance in this case. In Holt a man died leaving a widow and three children. While a wrongful death action was pending the widow remarried and subsequently died. Thereafter, damages were recovered and the second husband petitioned the court for one-half the proceeds as surviving spouse. The court rejected the petition, finding no property right in the wife. The court held:
"The gist of the argument is that Mrs. Holt's interest in the cause of action arising out of the death of her first husband became a part of the property of her estate.... [W]e state our conclusion that the mere right to sue for damages conferred by section 2486 of the Code, is not property, within the meaning of the statutes of distribution.

"... It is also well settled that, in the absence of statutory provision, rights of action for torts purely personal do not survive, and are not assignable. Weller v. Jersey City Railway Company, 68 N.J.Eq. 659, 61 Atl. 459; Id., 6 Am. & Eng.Ann.Cas. 442. Scores of adjudicated cases might be cited to both these propositions. The right to prosecute an action for the wrongful death of his decedent is vested by the statute creating the right (Code, § 2486) in the personal representative for a definite legislative purpose, to prevent homicide. In prosecuting such action, the personal representative does not act strictly in his capacity as administrator of the estate of his decedent, because he is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent. He acts rather as an agent of legislative appointment for the effectuation of the legislative policy, and upon recovery as a quasi trustee for those who stand in the relation of distributees to the estate strictly so called.White v. Ward, 157 Ala. 345, 47 South. 166, 18 L.R.A. (N.S.) 568. And the right is vested in the personal representative alone. No one else, under any circumstances except in case of the death of a minor child, where section 2485 gives a preferred right to the father or mother, can maintain the action in any forum. The mere right of action is therefore nonassignable at law and in equity. The right of disposition is inherent in every notion of property. On these considerations of general law, we are of opinion that Mrs. Holt had no property right in the cause of action created by statute. Her right was personal merely.

"Another consideration conduces to the same conclusion. By section 2 of the Code, `personal property' is defined to include `money, goods, chattels, things in action and evidences of debt, deeds and conveyances.' In a certain broad sense, `things in action' include demands in tort for injuries strictly personal. In a narrower sense, it includes only assignable rights of action, and this is the sense in which it is generally used.Gibson v. Gibson, 43 Wis. 23, 28 Am.Rep. 527; People v. Tioga, 19 Wend. (N.Y.) 73. The words associated with `things of action' in the statutory definition indicate the legislative intention to use the term consonantly with its general use; that is, *33 in its more limited meaning. The context speaks of tangible subjects of property right and evidences of debt. There is also a significant collocation of things in action and evidences of debt. No debt arises out of tort in advance of judgment....
"Our conclusion is that, whatever may have been the case if judgment had been recovered prior to the death of Mrs. Holt, under the facts shown, the probate court correctly adjudged the appellant to be without right in the premises." (Emphasis added.) 174 Ala. at 215-217, 56 So. at 912.
Applying Holt to the present facts, there was not even so much as a pending action at the time of Mrs. Lowe's death; and judgment thereon was not recovered until May 1981. Mrs. Lowe, having died before the wrongful death action was reduced to judgment, had no property right in the potential wrongful death action on behalf of her mother. We affirm the trial court's holding that the plaintiff, Roy Ronald Lowe, individually, and as administrator of the estate of Lou Anne Lowe, deceased, is not entitled to share in the proceeds at issue designated to the Fulford Estate.

The Lowe Estate
The proceeds recovered from the wrongful death action on behalf of Mrs. Lowe were designated to the Lowe Estate. On the basis of the statutory scheme for distribution of personalty to surviving spouses in effect at the time of Mrs. Lowe's death, September 20, 1973, plaintiff received one-half of the monies recovered. Code of 1975, § 43-3-12. In seeking to obtain the remaining one-half of the proceeds at issue before this Court, plaintiff contends that the statute of distribution in effect at the time of his wife's death should be declared unconstitutional on the grounds of impermissible gender-based discrimination in violation of the Fifth and Fourteenth amendments.
As stated in the trial court's order:
"At the time of Mrs. Lowe's death on September 20, 1973, the Ala.Code, Title 16, §§ 10, 12 (1940, Recomp.1958), subsequently Ala.Code, §§ 43-3-10, 43-3-12 (1975), set forth the statutory scheme for distribution of personalty to surviving spouses. Ala.Code, § 43-3-10 (1975), provided at that time that a widow, if there was no children, would receive all of the personal estate of her spouse upon his death. Ala.Code, § 43-3-12 (1975), provided at that time that a widower would receive one-half of the personal estate of his spouse upon her death."
Plaintiff contends that because the statute controlling at the time of his wife's death was unconstitutional he should be entitled to 100% of the proceeds recovered in the wrongful death action, just as his wife would have received 100% of his personalty if he had died with her surviving.
We agree with the trial court's order as to the following:
"Generally courts are reluctant to reach constitutional questions, and should not do so, if the merits of the case can be settled on non-constitutional grounds. White v. U.S. Pipe & Foundry Co., 646 F.2d 203 (5th Cir.1981). Courts will inquire into the constitutionality of a statute only when and to the extent that the case before the court requires. Steward Machine Co. v. Davis, 89 F.2d 207 (5th Cir.1937), aff'd, 301 U.S. [548], 558 [57 S.Ct. 883, 81 L.Ed. 1279]. A court has a duty to avoid constitutional questions unless essential to the proper disposition of the case. Doughty v. Tarwater, 261 Ala. 263, 73 So.2d 540 (1954); Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757 (1952); Lee v. Macon Co. Board of Education, 231 F.Supp. 743 (M.D.Ala.1964).
"No matter how much the parties may desire adjudication of important questions of constitutional law, broad considerations of the appropriate exercise of judicial power prevents such determinations unless actually compelled by the litigation before the court. Troy State University v. Dickey, 402 F.2d 515 (5th Cir.1968). Legislative enactments will be assumed to be valid until assailed by *34 someone injuriously affected thereby. State v. Montgomery, 177 Ala. 212, 59 So. 294 (1912).
". . . .
"If a statute is declared unconstitutional on the grounds of denial of equal protection due to different treatment being discriminatorily accorded such as through underinclusiveness, a court may satisfy the Constitution's commands by either extending benefits to those excluded from the scope of ... its coverage or by invalidation of the statute in its entirety. Ransom v. Ransom, 401 So.2d 746 (Ala.1981). There the Alabama Supreme Court, just as the Court of Civil Appeals in Orr v. Orr, 374 So.2d 895 (Ala.Civ.App.1979), decided to breathe constitutionality [sic] validity into the act in question to effectuate the legislative intent...."
In holding that the plaintiff was entitled to one-half the Lowe Estate, the trial court's order enacted in February 1982 manifests that he applied the wording of Code of 1975, § 43-3-10, as amended, Acts 1981, 1st Ex.Sess., No. 81-967,[1] effective August 20, 1981, which reads as follows:
"The personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as real estate, and according to the same rules; if a spouse having a separate estate dies intestate, leaving a spouse living, the surviving spouse is entitled to one half of the personalty of such separate estate absolutely and to the use of the realty during his or her lifetime."
Unfortunately, the trial court considered this as the latest amendment to Code of 1975, § 43-3-10. In fact the statute was amended by Acts 1981, 3rd Ex.Sess., No. 81-1170.[2] The second 1981 amendment, approved November 30, 1981, effective retroactively as of 9:30 a.m., August 20, 1981, rewrote § 43-3-10 to read as follows:
"The personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as real estate, and according to the same rules; except that in any event the surviving spouse is entitled to no less than one half of the personalty of such separate estate absolutely."
It is clear from the record that this change in the law was neither comprehended by the trial court nor brought to its attention by the attorneys. Nevertheless, at the time the trial court's order was entered the law did allow the surviving spouse, in this case the husband, a minimum of one-half the remaining personalty after the payment of debts and charges against the estate.
Contrary to the trial court's conclusion, Code of 1975, § 43-3-10, had in fact been amended three times. The most recent pronouncement of legislative intent for § 43-3-10, as of the date of judgment, was found in Act 81-1170,[3] and it supported appellant's contention that he was entitled to 100% of the proceeds recovered in the wrongful death action on behalf of his wife. The latest legislative effort in § 43-3-10 as of the date of judgment stated that the surviving spouse was entitled to no less than one-half of the personalty and also stated that "[t]he personal estate of persons dying intestate as to such estate ... is to be distributed in the same manner as real estate, and according to the same rules." Reading § 43-3-10 in pari materia with § 43-3-1, which provided for the descent and distribution of real estate of an intestate, leads us to conclude that the legislature intended that a surviving spouse receive all the personalty when *35 there were no children. Section 43-3-1 read in pertinent part:
"The real estate of persons dying intestate, as to such estate descends, subject to the payment of debts and charges against the estate as follows:
". . . .
"(2) If there are no children or their descendants then the whole to the surviving spouse of the intestate."
To summarize, Mrs. Lowe died September 20, 1973, and at that time §§ 43-3-10 and 43-3-12 provided the statutory scheme for distribution of personalty to surviving spouses. Under § 43-3-12, Mr. Lowe received one-half of the proceeds recovered in the wrongful death action on behalf of his deceased wife. On August 20, 1981, the legislature amended § 43-3-1 and § 43-3-10, and repealed completely § 43-3-12 by Act 81-967. Later, on November 30, 1981, Act 81-967 was amended and superseded by Act 81-1170, effective retroactively as of August 20, 1981. The only difference in these two acts was in the rewording of § 43-3-10. Construing § 43-3-10, as it read at the date of judgment, in pari materia with § 43-3-1, we conclude that it was the intent of the legislature that when there were no surviving children the surviving spouse, here Mr. Lowe, was to receive 100% of the personalty absolutely. Therefore, regarding the balance of the proceeds designated to the Lowe Estate, we must reverse the judgment and remand this case for further proceedings in accord with this opinion.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All Justices concur in the granting of rehearing; all Justices concur in the opinion as it relates to the Fulford Estate except JONES and ADAMS, JJ., who dissent; all Justices concur in the opinion as it relates to the Lowe Estate, except TORBERT, C.J., and JONES and FAULKNER, JJ., who concur in the result.
JONES, J., writes separately in dissent as to the Fulford Estate, joined by ADAMS, J., and to concur in the result as to the Lowe Estate, joined by TORBERT, C.J., and FAULKNER, J.
JONES, Justice (concurring in the result in part and dissenting in part).
I concur in the result of the second portion of the majority's opinion, dealing with the Lowe Estate, and respectfully dissent as to that part of the opinion dealing with the Fulford Estate.
The majority relies on Holt v. Stollenwerck in denial of Plaintiff's intestate share of the Fulford Estate proceeds. I agree that Holt is authority for so holding. I would overrule Holt, for I believe its holding incorrectly focuses upon indeterminate time factors relating to the wrongful death claim, and thereby overlooks the correct distribution of proceeds mandated by statute and case law. Because Mrs. Lowe survived her mother, Mrs. Fulford, and because Mrs. Lowe was an heir when the wrongful death cause of action accrued that being the date of her mother's death proceeds recovered from prosecution of that action should pass to Plaintiff through his wife, Lou Anne Lowe, according to the statute of distribution.
The majority correctly states: "[A]t the time of Mrs. Fulford's death the heirs at law entitled to share in her inheritable estate included Lou Anne Lowe. Heirs are determined at the time of death. White v. Fowler, 245 Ala. 209, 16 So.2d 399 (1944)." 442 So.2d at 31. The majority opinion, however, focusing on the existence vel non of a property right of Mrs. Lowe in the wrongful death cause of action, incorrectly concludes that her "right was personal and ceased to exist upon her death."
Code 1975, § 6-2-38(a), states:
"An action by a representative to recover damages for wrongful act, omission or negligence causing the death of the decedent under sections 6-5-391 and 6-5-410 must be commenced within two years from the death."
*36 This statute clearly delineates a two-year period for wrongful death suits, such period beginning upon the accrual of the cause of actionthe date of death. Therefore, at the time of Lou Anne Lowe's death, which occurred subsequent to Mrs. Fulford's death, the wrongful death cause of action, arising from Mrs. Fulford's death, had accrued.
In the recent case of Blansit v. Cornelius & Rush Coal Co., Inc., 380 So.2d 859 (Ala.1980), this Court, in addressing the issue of proper allocation of death benefits, stated:
"While § 6-5-410 of the Alabama Code requires a `personal representative' of the decedent to commence a wrongful death action, the real parties in interest, and the intended beneficiaries under the statute, are the heirs of the decedent determined by the statute of distribution. Board of Trustees of the University of Alabama v. Harrell, 43 Ala.App. 258, 188 So.2d 555 (1965)." 380 So.2d at 861.
In Hardin v. Sellers, 270 Ala. 156, 117 So.2d 383 (1960), the Court stated, concerning the proceeds recovered:
"Indeed, the recovery does not go to the wife or the husband, but to the estate of the decedent as stated in South & North Alabama Railroad Co. v. Sullivan [59 Ala. 272, 279 (1877)].
"`To whom does the compensation go? Not to the husband, wife or child. The statute contains no provision that the recovery shall go to these. It shall be "distributed as personal property of an intestate is now distributed." That is, it goes to the estate of the decedent, with the limitation, that the fund "shall not be subject to the payment of the debts of the deceased."'"
270 Ala. at 159, 117 So.2d 383.
Six years after Hardin, the Court, in Stevens v. Thompson, 279 Ala. 232, 184 So.2d 140 (1966), discussed the quoted language from Sullivan relating to the disposition of wrongful death proceeds. The issue arose in the context of deciding whether a witness was competent to testify under the Dead Man's Statute, Code 1940, Title 7, § 433, which declares one having a pecuniary interest in the decedent's estate incompetent to testify "as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit."
In Stevens, the Court, citing Holt and other cases, held that the estate of a decedent is not interested in the result of a wrongful death action because the damages recoverable in such suit are not assets of the estate, but, instead, are paid directly to the distributees by the personal representative. In so holding, the Stevens Court noted the apparent conflict between the language in Hardin and Sullivan and the Holt line of cases:
"These statements that a recovery under the Homicide Statute goes to the estate of the decedent are in conflict with the foregoing authorities (holding that damages recoverable under the Homicide Statute are not assets of the estate) and will not be followed."
Careful study of Stevens, and authority cited therein supporting the proposition that assets recovered are not part of the estate, shows the Court only disagreed with statements indicating that a wrongful death "recovery ... goes to the estate," thereby making the estate interested in the outcome of the wrongful death litigation. See, e.g., Atlantic Coast Line R. Co. v. Flowers, 241 Ala. 446, 3 So.2d 21 (1941) (witness not disqualified because estate not interested in suit); Stephens v. Williams, 226 Ala. 534, 147 So. 608 (1933) (estate of decedent not interested in result of suit and administratrix competent to testify).
No inconsistency exists between the cases as regards the distribution of wrongful death proceeds, the problem which faces us in the instant case. Our case law clearly recognizes the statutory mandate that wrongful death proceeds go directly to the heirs of the deceased according to the statutory scheme of intestate succession. Baggett v. Sellers, 282 Ala. 235, 210 So.2d 796 (1968) (damages recovered must be distributed according to statute of distribution); Hatas v. Partin, 278 *37 Ala. 65, 175 So.2d 759 (1965) (personal representative is conduit for collecting damages and passing them over to those entitled under statute); Stephens v. Williams, supra, (administratrix is statutory representative, suing for sole benefit of beneficiaries named in statute); Kuykendall v. Edmondson, 205 Ala. 265, 87 So. 882 (1921) (distributees of decedent's estate are sole beneficiaries of proceeds); Kennedy v. Davis, 171 Ala. 609, 55 So. 104 (1911) (property right in damages vested exclusively in distributees of intestate); Louisville and Nashville R.R. Co. v. Street, 164 Ala. 155, 51 So. 306 (1909) (sum recovered not asset of estate, not subject to decedent's debts or liabilities, and sum recovered is distributable in accordance with our statute of distribution).
In order to ascertain the proper allocation of wrongful death proceeds, one must look to the statute of distribution in effect at decedent's date of death. The heirs, ascertained at the date of death, are entitled to share, according to statute, in any proceeds forthcoming from a wrongful death action. Apart from the statutory "payment of the debts" exception recognized in Hardin, supra, no sound reason exists to support different treatment in the distribution of wrongful death proceeds as compared to other personal property of the decedent.
The entitlement to wrongful death proceeds, if any, vests in heirs entitled to take under the laws of intestate distribution effective upon the decedent's death. The mere fact that the action yielding those proceeds is not commenced, or has not come to judgment, upon the death of one entitled to take, does not alter the fact that the proceeds, under these circumstances, pass to the heirs-at-law of the person so entitled. Any contrary holding interjects uncertainty and unfairness into the distribution process by allowing fortuitous circumstances to control the disposition of the proceeds.
Holt's result-oriented holding creates more problems than it solves.[1] Through a mysterious and contortional process of reasoning, it seeks to transpose the legal incident fixing the heirs entitled to share in the proceeds of a wrongful death recovery from the date of death to some indefinable future eventthe date of judgment, a date which is subject to the unilateral manipulation of the personal representative.
Suppose the personal representative is one of the heirs who stands to increase his distributive share by the death of another heir before the date of judgment. Particularly when death of another heir is impending, why not await that heir's death before filing suit, or entering judgment, or executing the release, as the case may be? A rule of law that permits, even encourages, such control, by unmonitored manipulation, is nonsensical and violative of the whole of the statutory scheme of intestate succession. In all circumstances, the operative legal incident, triggering the distributee determination, should be fixed as a matter of law, rather than, in the single circumstance of wrongful death, depend upon subsequent extraneous events.
Holt took very simply written, direct language in the wrongful death statute, which clearly contemplates distribution of wrongful death proceeds in the same manner as other personal property, and carved out of whole cloth a special rule relating only to wrongful death recovery. I find absolutely no authority for the proposition that, in intestate administrations generally, those funds collected through litigation go to the statutory heirs determined as of the date such suits are reduced to judgment or are otherwise payable.
If I am mistaken in this regard, and, indeed, if it is the law that heirs of one who dies intestate are determined as of the date *38 of death only to the extent of liquidated assets (that is, personal property in hand as of the date of death), then I will gladly stand corrected; for it is the basis of my dissent that, except for the mandate exempting the proceeds from the payment of debts, wrongful death proceeds are to be handled in every respect the same as other personal property.
For example, suppose the deceased had been injured in an automobile wreck, suffered medical expenses, loss of earnings, pain and suffering, etc. He filed suit and, during its pendency, died intestate from causes unrelated to the accident. Clearly, the action (as opposed to the cause of action) survives and is revivable pursuant to § 6-5-462. No one would even suggest that the recovery affected by the administrator for this tort would be distributed in any manner different from monies recovered from a contractual obligation, or from a bank account, or from any other personal property comprising the assets of the estate.
Unquestionably, all the personal property of such an estate, whether its source consists of funds in hand, or monies collected by litigation enforcing contractual causes of action or survivable tort actions, "must be distributed according to the statute of distributions," subject, of course, to the payment of debts. For a general discussion of estate debts and rights of action, see 33 C.J.S. Executors and Administrators §§ 100 and 102 (1942). With the same degree of certainty, the heirs-at-law are determined as of the date of the intestate's death. Why, then, in the face of the statutory mandate that "damages recovered [for wrongful death] must be distributed according to the statute of distributions," should a different rule obtain with respect to when the wrongful death distributees are to be determined?
The only difference that can be gleaned from the controlling statutes is that distribution of personal assets generally is subject to the payment of debts, while distribution of wrongful death proceeds is not subject to the payment of debts. Surely, nothing in this "not subject to the payment of debts" difference in the wrongful death statute suggests a difference in the manner of determining the persons entitled to share in the distribution of wrongful death benefits. Indeed, to judicially create such a difference is to thwart the legislative expression of public policy with regard to the eligible heirs-at-law of a wrongful death decedent.
Holt and the instant majority opinion suggest that the punitive nature of our Homicide Statute supports the different treatment rationale as between proceeds of estates generally and wrongful death proceeds. I maintain just the opposite view. I find absolutely no authority, nor in reason could there be any, for the proposition that the wrongful death tortfeasor, under Alabama's "punitive damages only" rule, has standing to raise as a defense the fact that the wrongful death decedent left no surviving heirs-at-law. This point is dramatized by the contrary result that obtains in a compensatory claim under the Workmen's Compensation Act, where death benefits are denied because the deceased employee leaves no surviving dependents. See Patterson v. Sears-Roebuck & Co., 196 F.2d 947 (5th Cir.1952).
But, first, we need to understand the majority's "punitive damages" rationale. The majority's point is to the effect that, because the damages are merely punitive, the heirs-at-law are determinable at the time of judgment (or at the time the proceeds are otherwise collectible) as opposed to the statutory heirs at the time of decedent's death. The "punitive damages only" significance, supposedly, is that heirs who die between the date of death and the collection of the proceeds no longer have a sufficient nexus with the punishable wrong as to share in the proceeds of the "civil fine." The language of the Homicide Statute simply does not lend itself to the implementation of such a policy.
Perhaps the clearest example refuting the "punitive damages only" rationale employed by the majority to justify a different rule of distribution in wrongful death cases *39 is where the wrongful death decedent leaves no surviving heirs; thus, the net proceeds of the recovery effected by the personal representative escheat to the State. Even in the absence of statutory distributees, the overall legislative policy of punishing the wrongdoer as a means of preserving human life is being implemented without regard to whether the victim of the wrong fortuitously left surviving heirs.
Indeed, a majority of the states which permit compensatory damages only to specifically named dependents hold, consistent with Patterson, supra, that prior death of the heirs (i.e., the non-existence of named classes authorized to recover) abates the action. For a collection and analysis of the cases, see 43 A.L.R.2d 1291, Effect of Death of Beneficiary Upon Right of Action Under Death Statute (1955), and 43 A.L.R.2d Later Case Service at 548-550 (1980). A different rule obtains and no abatement of wrongful death actions results, where the decedent leaves no heirsat-law; thus, I am unable to find any justification in this or any other proffered rationale for a rule of law that treats wrongful death proceeds in a manner different from personal assets generally, except as expressly provided by statutei.e., that wrongful death proceeds are not subject to the payment of debts. Moreover, Massachusetts is the only other state whose wrongful death statute was once the same as our § 6-5-410, and this dissent accords with the Massachusetts Supreme Judicial Court's interpretation of that state's earlier punitive wrongful death statute. Johnston v. Bay State St. Ry. Co., 222 Mass. 583, 111 N.E. 391 (1916).
In conclusion, an explanation for my concurrence in the result of the majority's opinion as to the Lowe Estate is appropriate. Having disagreed with the majority's holding as to the Fulford Estate, and consistent with my reasons therefore, I would apply the law applicable at the time of Mrs. Lowe's death in determining the wrongful death distributees of her estate. This would lead me to a determination of the issue of constitutionality of the genderbased classifications contained in those applicable statutes. As did the trial judge, I would find such classifications unconstitutional. Again, as did the trial judge, I would defer to the subsequent acts of the legislature which removed the genderbased distinction and render these descent and distribution statutes constitutional in the same manner as did Act No. 81-1170 (passed November 30, 1981, made retroactive to August 20, 1981). Under that statute, the surviving spouse, where there are no children, receives the entire intestate personalty. (Obviously, if the trial judge had correctly used Act No. 81-1170 rather than the repealed Act No. 81-967, he would have reached this same conclusion.)
But my views with respect to distribution of the Fulford Estate wrongful death proceeds do not prevail. Therefore, I join the majority; and, pursuant to its holding and rationale as to the Fulford Estate, I would look to the law in effect at the time of the rendition of the Lowe wrongful death judgment. While I agree with the holding of the Court that the whole of the Lowe Estate proceeds be distributed to the surviving spouse, again I must differ as to the applicable law mandating this result.
Except for correcting the trial court's erroneous reference to repealed Act No. 81-967 (which retained the gender-based distinction as between surviving spouses) and applying Act No. 81-1170 (which repealed Act No. 81-967 and abolished this unconstitutional classification by providing that either surviving spouse takes 100% of intestate personalty), the majority's opinion adopts the reasoning of the trial court. Herein lies our point of difference. In my opinion, the law in effect on May 25, 1981 (the date of the Lowe judgment), contained no unconstitutional gender-based classification as it related to the surviving spouse where there are no children.
The trial court's analysis of the Lowe Estate begins with this sentence:
"At the time of Mrs. Lowe's death on September 20, 1973, the Ala.Code, Title 16, §§ 10, 12 (1940, Recomp.1958), subsequently Ala.Code, §§ 43-3-10, 43-3-12 *40 (1975), set forth the statutory scheme for distribution of personalty to surviving spouses."
The error of the trial court is readily apparent. Having rejected the plaintiff's contention that wrongful death distributees are determined at the time of the intestate's death with respect to the Fulford Estate, the trial court was bound to apply the same principle in its resolution of the Lowe Estate issue. It is inconsistent on its face to reject plaintiff's claim in the Fulford Estate by looking to the date of judgment as opposed to the date of death, and, at the same time, apply the law at the time of Mrs. Lowe's death in determining the distributive shares in her estate.
Such error could be error without injury only if the law at the time of death and at the time of judgment is the same. But not so. The judgment subject to distribution was entered in May 1981; and the law applicable to the distribution of these proceeds is Act No. 80-764 (effective May 28, 1980), § 43-3-1. This statute removed all gender-based distinctions as between spouses and ordered that intestacy real estate descends wholly to the surviving spouse where, as here, there are no children. The only portion of § 43-3-10 applicable to a surviving spouse where there are no children, then as now, provided that personal property is to be distributed in the same manner as realtythat is, the surviving spouse takes all. Any pre-existing contrary provisions of § 43-3-12 (containing the gender-based distinction and repealed by Act No. 81-1170) could not contravene the clear wording of § 43-3-1, as last amended in May 1980.
In other words, when the Lowe judgment was entered and subject to distribution (in accordance with the Fulford portion of this opinion), the law then in effectwhich contains no gender-based classification, where, as here, there are no childrenmandates that the husband take 100% of the wrongful death recovery in the Lowe Estate. So, instead of looking to a subsequent legislative act to guide the court as to the appropriate correction of an unconstitutional act (conforming the act to constitutional standards), we need only apply the then existing constitutional act, and award the husband the remaining one-half of the Lowe Estate proceeds.
ADAMS, J., concurs as to the Fulford Estate; TORBERT, C.J., and FAULKNER, J., concur as to the Lowe Estate.
NOTES
[1] We note that Act 81-967 also repealed § 43-3-12, which relates to the husband's distributive share of the wife's estate. Further, § 43-3-1, which provides for the descent and distribution of realty, was amended by this Act.
[2] When Act 81-967 was amended and superseded by Act 81-1170, the only change was the rewording of § 43-3-10.
[3] We note that §§ 43-3-1 through 43-3-12 have now been repealed by Acts 1982, No. 82-399, § 8-102, effective January 1, 1983.
[1] I have termed Holt "result-oriented" because a contrary holding would have permitted the second husband of the decedent's widow (who also died before judgment) to collect the proceeds of the recovery by the personal representative based on the first husband's death. But this is "the way the cookie crumbles." In intestate administrations, generally, in-laws frequently end up with shares of such estates.