I concur in the result of the second portion of the majority's opinion, dealing with the Lowe Estate, and respectfully dissent as to that part of the opinion dealing with the Fulford Estate.
The majority relies on Holt v. Stollenwerck in denial of Plaintiff's intestate share of the Fulford Estate proceeds. I agree that Holt is authority for so holding. I would overruleHolt, for I believe its holding incorrectly focuses upon indeterminate time factors relating to the wrongful death claim, and thereby overlooks the correct distribution of proceeds mandated by statute and case law. Because Mrs. Lowe survived her mother, Mrs. Fulford, and because Mrs. Lowe was an heir when the wrongful death cause of action accrued — that being the date of her mother's death — proceeds recovered from prosecution of that action should pass to Plaintiff through his wife, Lou Anne Lowe, according to the statute of distribution.
The majority correctly states: "[A]t the time of Mrs. Fulford's death the heirs at law entitled to share in her inheritable estate included Lou Anne Lowe. Heirs are determined at the time of death. White v. Fowler, 245 Ala. 209,16 So.2d 399 (1944)." 442 So.2d at 31. The majority opinion, however, focusing on the existence vel non of a property right of Mrs. Lowe in the wrongful death cause of action, incorrectly concludes that her "right was personal and ceased to exist upon her death."
Code 1975, § 6-2-38 (a), states:
 "An action by a representative to recover damages for wrongful act, omission or negligence causing the death of the decedent under sections 6-5-391 and 6-5-410 must be commenced within two years from the death." *Page 36 
This statute clearly delineates a two-year period for wrongful death suits, such period beginning upon the accrual of the cause of action — the date of death. Therefore, at the time of Lou Anne Lowe's death, which occurred subsequent to Mrs. Fulford's death, the wrongful death cause of action, arising from Mrs. Fulford's death, had accrued.
In the recent case of Blansit v. Cornelius Rush Coal Co.,Inc., 380 So.2d 859 (Ala. 1980), this Court, in addressing the issue of proper allocation of death benefits, stated:
 "While § 6-5-410 of the Alabama Code requires a `personal representative' of the decedent to commence a wrongful death action, the real parties in interest, and the intended beneficiaries under the statute, are the heirs of the decedent determined by the statute of distribution. Board of Trustees of the University of Alabama v. Harrell, 43 Ala. App. 258, 188 So.2d 555 (1965)." 380 So.2d at 861.
In Hardin v. Sellers, 270 Ala. 156, 117 So.2d 383 (1960), the Court stated, concerning the proceeds recovered:
 "Indeed, the recovery does not go to the wife or the husband, but to the estate of the decedent as stated in South North Alabama Railroad Co. v. Sullivan [59 Ala. 272, 279 (1877)].
 "`To whom does the compensation go? Not to the husband, wife or child. The statute contains no provision that the recovery shall go to these. It shall be "distributed as personal property of an intestate is now distributed." That is, it goes to the estate of the decedent, with the limitation, that the fund "shall not be subject to the payment of the debts of the deceased."'"
270 Ala. at 159, 117 So.2d 383.
Six years after Hardin, the Court, in Stevens v. Thompson,279 Ala. 232, 184 So.2d 140 (1966), discussed the quoted language from Sullivan relating to the disposition of wrongful death proceeds. The issue arose in the context of deciding whether a witness was competent to testify under the Dead Man's Statute, Code 1940, Title 7, § 433, which declares one having a pecuniary interest in the decedent's estate incompetent to testify "as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit."
In Stevens, the Court, citing Holt and other cases, held that the estate of a decedent is not interested in the result of a wrongful death action because the damages recoverable in such suit are not assets of the estate, but, instead, are paid directly to the distributees by the personal representative. In so holding, the Stevens Court noted the apparent conflict between the language in Hardin and Sullivan and the Holt line of cases:
 "These statements that a recovery under the Homicide Statute goes to the estate of the decedent are in conflict with the foregoing authorities (holding that damages recoverable under the Homicide Statute are not assets of the estate) and will not be followed."
Careful study of Stevens, and authority cited therein supporting the proposition that assets recovered are not part of the estate, shows the Court only disagreed with statements indicating that a wrongful death "recovery . . . goes to the estate," thereby making the estate interested in the outcome of the wrongful death litigation. See, e.g., Atlantic Coast LineR. Co. v. Flowers, 241 Ala. 446, 3 So.2d 21 (1941) (witness not disqualified because estate not interested in suit); Stephensv. Williams, 226 Ala. 534, 147 So. 608 (1933) (estate of decedent not interested in result of suit and administratrix competent to testify).
No inconsistency exists between the cases as regards thedistribution of wrongful death proceeds, the problem which faces us in the instant case. Our case law clearly recognizes the statutory mandate that wrongful death proceeds go directly to the heirs of the deceased according to the statutory scheme of intestate succession. Baggett v. Sellers, 282 Ala. 235,210 So.2d 796 (1968) (damages recovered must be distributed according to statute of distribution); Hatas v. Partin, *Page 37 278 Ala. 65, 175 So.2d 759 (1965) (personal representative is conduit for collecting damages and passing them over to those entitled under statute); Stephens v. Williams, supra, (administratrix is statutory representative, suing for sole benefit of beneficiaries named in statute); Kuykendall v.Edmondson, 205 Ala. 265, 87 So. 882 (1921) (distributees of decedent's estate are sole beneficiaries of proceeds); Kennedyv. Davis, 171 Ala. 609, 55 So. 104 (1911) (property right in damages vested exclusively in distributees of intestate);Louisville and Nashville R.R. Co. v. Street, 164 Ala. 155,51 So. 306 (1909) (sum recovered not asset of estate, not subject to decedent's debts or liabilities, and sum recovered is distributable in accordance with our statute of distribution).
In order to ascertain the proper allocation of wrongful death proceeds, one must look to the statute of distribution in effect at decedent's date of death. The heirs, ascertained at the date of death, are entitled to share, according to statute, in any proceeds forthcoming from a wrongful death action. Apart from the statutory "payment of the debts" exception recognized in Hardin, supra, no sound reason exists to support different treatment in the distribution of wrongful death proceeds as compared to other personal property of the decedent.
The entitlement to wrongful death proceeds, if any, vests in heirs entitled to take under the laws of intestate distribution effective upon the decedent's death. The mere fact that the action yielding those proceeds is not commenced, or has not come to judgment, upon the death of one entitled to take, does not alter the fact that the proceeds, under these circumstances, pass to the heirs-at-law of the person so entitled. Any contrary holding interjects uncertainty and unfairness into the distribution process by allowing fortuitous circumstances to control the disposition of the proceeds.
Holt's result-oriented holding creates more problems than it solves.[1] Through a mysterious and contortional process of reasoning, it seeks to transpose the legal incident fixing the heirs entitled to share in the proceeds of a wrongful death recovery from the date of death to some indefinable future event — the date of judgment, a date which is subject to the unilateral manipulation of the personal representative.
Suppose the personal representative is one of the heirs who stands to increase his distributive share by the death of another heir before the date of judgment. Particularly when death of another heir is impending, why not await that heir's death before filing suit, or entering judgment, or executing the release, as the case may be? A rule of law that permits, even encourages, such control, by unmonitored manipulation, is nonsensical and violative of the whole of the statutory scheme of intestate succession. In all circumstances, the operative legal incident, triggering the distributee determination, should be fixed as a matter of law, rather than, in the single circumstance of wrongful death, depend upon subsequent extraneous events.
Holt took very simply written, direct language in the wrongful death statute, which clearly contemplates distribution of wrongful death proceeds in the same manner as other personal property, and carved out of whole cloth a special rule relating only to wrongful death recovery. I find absolutely no authority for the proposition that, in intestate administrations generally, those funds collected through litigation go to the statutory heirs determined as of the date such suits are reduced to judgment or are otherwise payable.
If I am mistaken in this regard, and, indeed, if it is the law that heirs of one who dies intestate are determined as of the date *Page 38 
of death only to the extent of liquidated assets (that is, personal property in hand as of the date of death), then I will gladly stand corrected; for it is the basis of my dissent that, except for the mandate exempting the proceeds from the payment of debts, wrongful death proceeds are to be handled in every respect the same as other personal property.
For example, suppose the deceased had been injured in an automobile wreck, suffered medical expenses, loss of earnings, pain and suffering, etc. He filed suit and, during its pendency, died intestate from causes unrelated to the accident. Clearly, the action (as opposed to the cause of action) survives and is revivable pursuant to § 6-5-462. No one would even suggest that the recovery affected by the administrator for this tort would be distributed in any manner different from monies recovered from a contractual obligation, or from a bank account, or from any other personal property comprising the assets of the estate.
Unquestionably, all the personal property of such an estate, whether its source consists of funds in hand, or monies collected by litigation enforcing contractual causes of action or survivable tort actions, "must be distributed according to the statute of distributions," subject, of course, to the payment of debts. For a general discussion of estate debts and rights of action, see 33 C.J.S. Executors and Administrators §§ 100 and 102 (1942). With the same degree of certainty, the heirs-at-law are determined as of the date of the intestate's death. Why, then, in the face of the statutory mandate that "damages recovered [for wrongful death] must be distributed according to the statute of distributions," should a different rule obtain with respect to when the wrongful death distributees are to be determined?
The only difference that can be gleaned from the controlling statutes is that distribution of personal assets generally is
subject to the payment of debts, while distribution of wrongful death proceeds is not subject to the payment of debts. Surely, nothing in this "not subject to the payment of debts" difference in the wrongful death statute suggests a difference in the manner of determining the persons entitled to share in the distribution of wrongful death benefits. Indeed, to judicially create such a difference is to thwart the legislative expression of public policy with regard to the eligible heirs-at-law of a wrongful death decedent.
Holt and the instant majority opinion suggest that thepunitive nature of our Homicide Statute supports the different treatment rationale as between proceeds of estates generally and wrongful death proceeds. I maintain just the opposite view. I find absolutely no authority, nor in reason could there be any, for the proposition that the wrongful death tortfeasor, under Alabama's "punitive damages only" rule, has standing to raise as a defense the fact that the wrongful death decedent left no surviving heirs-at-law. This point is dramatized by the contrary result that obtains in a compensatory claim under the Workmen's Compensation Act, where death benefits are denied because the deceased employee leaves no surviving dependents. See Patterson v. Sears-Roebuck Co., 196 F.2d 947 (5th Cir. 1952).
But, first, we need to understand the majority's "punitive damages" rationale. The majority's point is to the effect that, because the damages are merely punitive, the heirs-at-law are determinable at the time of judgment (or at the time the proceeds are otherwise collectible) as opposed to the statutory heirs at the time of decedent's death. The "punitive damages only" significance, supposedly, is that heirs who die between the date of death and the collection of the proceeds no longer have a sufficient nexus with the punishable wrong as to share in the proceeds of the "civil fine." The language of the Homicide Statute simply does not lend itself to the implementation of such a policy.
Perhaps the clearest example refuting the "punitive damages only" rationale employed by the majority to justify a different rule of distribution in wrongful death cases *Page 39 
is where the wrongful death decedent leaves no surviving heirs; thus, the net proceeds of the recovery effected by the personal representative escheat to the State. Even in the absence of statutory distributees, the overall legislative policy of punishing the wrongdoer as a means of preserving human life is being implemented without regard to whether the victim of the wrong fortuitously left surviving heirs.
Indeed, a majority of the states which permit compensatory damages only to specifically named dependents hold, consistent with Patterson, supra, that prior death of the heirs (i.e., the non-existence of named classes authorized to recover) abates the action. For a collection and analysis of the cases, see 43 A.L.R.2d 1291, Effect of Death of Beneficiary Upon Right ofAction Under Death Statute (1955), and 43 A.L.R.2d Later CaseService at 548-550 (1980). A different rule obtains and no abatement of wrongful death actions results, where the decedent leaves no heirs-at-law; thus, I am unable to find any justification in this or any other proffered rationale for a rule of law that treats wrongful death proceeds in a manner different from personal assets generally, except as expressly provided by statute — i.e., that wrongful death proceeds are not subject to the payment of debts. Moreover, Massachusetts is the only other state whose wrongful death statute was once the same as our § 6-5-410, and this dissent accords with the Massachusetts Supreme Judicial Court's interpretation of that state's earlier punitive wrongful death statute. Johnston v.Bay State St. Ry. Co., 222 Mass. 583, 111 N.E. 391 (1916).
In conclusion, an explanation for my concurrence in theresult of the majority's opinion as to the Lowe Estate is appropriate. Having disagreed with the majority's holding as to the Fulford Estate, and consistent with my reasons therefore, I would apply the law applicable at the time of Mrs. Lowe's death in determining the wrongful death distributees of her estate. This would lead me to a determination of the issue of constitutionality of the gender-based classifications contained in those applicable statutes. As did the trial judge, I would find such classifications unconstitutional. Again, as did the trial judge, I would defer to the subsequent acts of the legislature which removed the gender-based distinction and render these descent and distribution statutes constitutional in the same manner as did Act No. 81-1170 (passed November 30, 1981, made retroactive to August 20, 1981). Under that statute, the surviving spouse, where there are no children, receives the entire intestate personalty. (Obviously, if the trial judge had correctly used Act No. 81-1170 rather than the repealed Act No. 81-967, he would have reached this same conclusion.)
But my views with respect to distribution of the Fulford Estate wrongful death proceeds do not prevail. Therefore, I join the majority; and, pursuant to its holding and rationale as to the Fulford Estate, I would look to the law in effect at the time of the rendition of the Lowe wrongful death judgment. While I agree with the holding of the Court that the whole of the Lowe Estate proceeds be distributed to the surviving spouse, again I must differ as to the applicable law mandating this result.
Except for correcting the trial court's erroneous reference to repealed Act No. 81-967 (which retained the gender-based distinction as between surviving spouses) and applying Act No. 81-1170 (which repealed Act No. 81-967 and abolished this unconstitutional classification by providing that either surviving spouse takes 100% of intestate personalty), the majority's opinion adopts the reasoning of the trial court. Herein lies our point of difference. In my opinion, the law in effect on May 25, 1981 (the date of the Lowe judgment), contained no unconstitutional gender-based classification as it related to the surviving spouse where there are no children.
The trial court's analysis of the Lowe Estate begins with this sentence:
 "At the time of Mrs. Lowe's death on September 20, 1973, the Ala. Code, Title 16, §§ 10, 12 (1940, Recomp. 1958), subsequently Ala. Code, §§ 43-3-10, 43-3-12 *Page 40 
(1975), set forth the statutory scheme for distribution of personalty to surviving spouses."
The error of the trial court is readily apparent. Having rejected the plaintiff's contention that wrongful death distributees are determined at the time of the intestate's death with respect to the Fulford Estate, the trial court was bound to apply the same principle in its resolution of the Lowe Estate issue. It is inconsistent on its face to reject plaintiff's claim in the Fulford Estate by looking to the date of judgment as opposed to the date of death, and, at the same time, apply the law at the time of Mrs. Lowe's death in determining the distributive shares in her estate.
Such error could be error without injury only if the law at the time of death and at the time of judgment is the same. But not so. The judgment subject to distribution was entered in May 1981; and the law applicable to the distribution of these proceeds is Act No. 80-764 (effective May 28, 1980), § 43-3-1. This statute removed all gender-based distinctions as between spouses and ordered that intestacy real estate descends wholly to the surviving spouse where, as here, there are no children. The only portion of § 43-3-10 applicable to a surviving spouse where there are no children, then as now, provided that personal property is to be distributed in the same manner as realty — that is, the surviving spouse takes all. Any pre-existing contrary provisions of § 43-3-12 (containing the gender-based distinction and repealed by Act No. 81-1170) could not contravene the clear wording of § 43-3-1, as last amended in May 1980.
In other words, when the Lowe judgment was entered and subject to distribution (in accordance with the Fulford portion of this opinion), the law then in effect — which contains no gender-based classification, where, as here, there are no children — mandates that the husband take 100% of the wrongful death recovery in the Lowe Estate. So, instead of looking to a subsequent legislative act to guide the court as to the appropriate correction of an unconstitutional act (conforming the act to constitutional standards), we need only apply the then existing constitutional act, and award the husband the remaining one-half of the Lowe Estate proceeds.
ADAMS, J., concurs as to the Fulford Estate; TORBERT, C.J., and FAULKNER, J., concur as to the Lowe Estate.
[1] I have termed Holt "result-oriented" because a contrary holding would have permitted the second husband of the decedent's widow (who also died before judgment) to collect the proceeds of the recovery by the personal representative based on the first husband's death. But this is "the way the cookie crumbles." In intestate administrations, generally, in-laws frequently end up with shares of such estates.